John McCARTHY t/d/b/a McCarthy Tire Service Co., Inc. (O.I.S. B238)

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 11, 2010.

Decided Nov. 5, 2010.

Abby N. Trovinger, Certified Legal Intern and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

Robert D. Schaub, Wilkes–Barre, for appellee.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

The Department of Transportation (Department), Bureau of Motor Vehicles (Bureau) appeals an order of the Court of Common Pleas of Luzerne County (trial court) dismissing the Department's suspension of John McCarthy's inspection station certification. In lieu of a one year suspension, the trial court ordered points be assigned against McCarthy. Concluding that the trial court did not err, we affirm.

The facts in this case are as follows. McCarthy Tire Service Co., Inc., which is owned by McCarthy, conducts vehicle emission inspections. On December 4, 2008, the Bureau's Quality Assurance Officer,[1] James Lachette, conducted a covert investigation of McCarthy Tire Service by presenting it with a vehicle with a faulty emissions system. Lachette watched as the mechanic, Walter Krolikowski, inspected the vehicle and hooked it up to an analyzer computer and printed out a report of the computer's readings. Krolikowski then informed Lachette that the vehicle had failed the inspection and gave Lachette a copy of the report showing "William J. Rollman" to be the person that had conducted the inspection. In the course of their conversation, Lachette realized that Krolikowski, in fact, was not "William J. Rollman." Lachette later researched Krolikowski and learned that his inspection certification had expired some time before he did the December 4, 2008, inspection.

On February 4, 2009, the Bureau sent McCarthy, Krolikowski, and the real William Rollman separate violation notices. McCarthy's notice identified the following violations:

Inspection by emission inspector with expired inspector certification (on a 1998 Toyota, VIN–JT3HP10VOW01793494) by Walter Krolikowski, Oper 11–924–757 *and fraudulent record keeping by William J. Rollman,* Oper 19–647–568.

1. A Quality Assurance Officer takes vehicles to inspection centers and observes whether emission inspection regulations are followed. Reproduced Record at 40a (R.R.____).

2. Section 177.602(a) establishes a schedule of penalties that can be imposed upon inspection stations. The penalty established for the first violation of "Fraudulent recordkeeping" is "1 year [suspension] and [a] $2,500 fine." 67 Pa.Code § 177.602(a)(iii).

R.R. 7a (emphasis added). A hearing was held by the Department on February 19, 2009. The hearing did not result in any sanctions on Rollman. However, sanctions were imposed upon Krolikowski and McCarthy.

On May 5, 2009, the Department informed McCarthy that because of Krolikowski's fraudulent recordkeeping, McCarthy's Certificate of Appointment as an Official Emission Inspection Station (inspection certificate) would be suspended for one year and McCarthy would have to pay a $2,500 fine. This penalty was authorized under 67 Pa.Code § 177.602(a)(iii).[2] The Department went on to explain that it had imposed a suspension, instead of points, because McCarthy "had knowledge" of Krolikowski's misconduct and because McCarthy was "responsible for ensuring that all personnel are properly certified to perform inspections." R.R. 53a.

■■■ McCarthy appealed the Department's ruling, and a *de novo* hearing was held before the trial court. McCarthy called no witnesses, and the Department called just one, Lachette. At the hearing McCarthy argued that because the Department did not provide him with sufficient notice, he had been denied due process. Specifically, the Department's notice complained of *Rollman*'s fraudulent recordkeeping, not Krolikowski's.[3] In a

3. Generally, participation in a *de novo* hearing cures any procedural defects regarding notice. *See Department of Transportation v. Sutton,* 541 Pa. 35, 40, 660 A.2d 46, 48 (1995) (holding a *de novo* statutory appeal hearing in the court of common pleas cures any defects in the Department's notice of suspension). However, at the trial court, McCarthy argued that the defective notice constituted a waiver of the issue of whether Krolikowski committed fraudulent recordkeeping. The trial judge stated that he would take the matter under

December 31, 2009, opinion, the trial court sustained McCarthy's appeal and set aside the suspension of McCarthy's inspection certificate. In doing so, the trial court explained:

Petitioner was without knowledge and could not have known that [he was] in violation. The Department had the burden of proving the foregoing on the Petitioner. Here, the Department failed to meet its burden with regard to knowledge of the violation.

R.R. 68a. The trial court then concluded: the owner and management were unaware that the violation took place. Furthermore, both sides agreed that at the time of inspection, no owners or general managers were present in the office. [Thus,] an assignment of points is a more appropriate sentence then the harsher imposition of a suspension.

R.R. 69a. The Department now appeals to this Court.

■ Our scope of review in an inspection certificate suspension case is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence. *Castagna v. Department of Transportation, Bureau of Motor Vehicles*, 831 A.2d 156, 160 n. 4 (Pa. Cmwlth.2003). Witness credibility lies solely within the province of the trial court. *Id.*

The Department contends that it was error for the trial court to substitute the Department's license suspension for a sanction more to the court's liking, *i.e.*, points. Specifically, it argues that McCarthy is strictly liable for the fraud committed by his employee, Krolikowski, regardless of whether McCarthy knew about Krolikowski's fraudulent conduct. The Department argues that once it met its burden of proving the violation, McCarthy bore the burden of producing evidence that he had properly supervised Krolikowski. This evidence could have persuaded the Department to sanction McCarthy with points instead of suspension. However, McCarthy did not present any evidence at the *de novo* hearing.[4]

■ We begin with a review of the relevant law. The Vehicle Code requires the Department to license and regulate vehicle inspection stations. Section 4724 states, in relevant part, as follows:

The [D]epartment shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the department.

75 Pa.C.S. § 4724(a). This provision has been construed to impose strict liability on a station owner for all acts of its employees conducted within the scope of their employment. *Department of Transportation, Bureau of Traffic Safety v. Stahl*, 75 Pa.Cmwlth. 18, 460 A.2d 1223, 1225 (1983).[5]

---

advisement, but he did not address it in his opinion. While the waiver issue may have merit, it was not addressed by the trial court, nor was it raised before this Court. Therefore, we may not consider it.

4. Before the trial court, McCarthy based his defense on the legal argument that the Department's notice did not assert fraudulent recordkeeping by Krolikowski, which denied

him due process. McCarthy also argued that the Department waived the issue of Krolikowski's fraudulent recordkeeping.

5. This is in contrast to the prior incarnation of the Vehicle Code, which allowed a station owner to avoid strict liability if it could be shown that the employee who committed the violation was acting without the authorization, knowledge, or consent of the employer.

For an act to fall within the "scope of employment," the employee's conduct must: (1) be of the kind they were employed to perform; (2) occur within the authorized time and space limits; (3) and must be done at least in part to serve the employer. *Id.* at 1225 (citing *Shuman Estate v. Weber,* 276 Pa.Super. 209, 419 A.2d 169, 173 (1980)). The station owner can defend an enforcement action by showing that the employee acted outside the scope of his employment.

In *Stahl,* for example, an employee "inspected" his personal automobile during business hours and affixed an inspection sticker to it despite its numerous violations. The employer was not present when the employee did so, and the employer had a policy prohibiting employees from working on their own cars during business hours. We held that the employee was not acting within the scope of his employment and, thus, the station owner could not be held liable for the employee's conduct.

The applicable regulation on the station owner's liability is addressed in the Department's regulation at 67 Pa.Code § 177.421. It states, in pertinent part, as follows:

(a) *Personal liability.* It is the responsibility of the owner of an emission inspection station to:

 \* \* \*

(6) Assume full responsibility, *with or without actual knowledge,* for:

(i) Every emission inspection conducted at the emission inspection station.

(ii) Every emission inspection waiver delivered by a certified repair technician at the emission inspection station.

(iii) Every certificate of emission inspection issued to the emission inspection station.

(iv) Every violation of the Vehicle Code or this chapter related to emission inspections committed by an employee of the emission inspection station.

(v) Maintaining an adequate supply of current certificates of emission inspection and inserts for issuance.

67 Pa.Code § 177.421(a)(6) (emphasis added). The regulation imposes strict liability upon station owners for "every violation of the Vehicle Code" committed by an employee acting within the scope of his employment.

■ One such violation pertains to recordkeeping. "Fraudulent recordkeeping" is defined as:

A recordkeeping entry not in accordance with fact, truth or required procedure that *falsifies or conceals* one or more of the following:

(i) That a certificate of inspection was issued without compliance with the required inspection procedure.

(ii) The number of inspections performed.

The former provision, Section 819 of the Act of April 29, 1959, P.L. 58, *as amended,* formerly, 75 P.S. § 819(b), repealed by the Act of June 17, 1976, P.L. 162, read, in pertinent part, as follows:

> If the secretary finds that the provisions of this act are not being complied with, or that the business of an official inspection station in connection with the ... inspection of motor vehicles ... is being improperly conducted, he shall suspend the certificate of appointment of any such station ... Provided, however, That if the servant or employee of any such inspection station shall without the authorization, knowledge or consent of his employer, violate any of the provisions of this act in reference to the inspection of vehicles, such violation or violations shall not be the cause of the suspension of the certificate of appointment. ...

(ii) *The individuals* or station *that performed the inspection.*

67 Pa.Code § 177.601 (emphasis added). Here, Krolikowski issued a substantively correct inspection report, but his report concealed the true identity of the person who did the inspection. It purported to show that William Rollman conducted the inspection, when in fact it was Krolikowski. Therefore, under the express language of Section 177.601, Krolikowski's record of the inspection was fraudulent.

A first offense for fraudulent record-keeping results in a one year suspension of the station's inspection certificate and a $2,500 fine. *See* 67 Pa.Code § 177.602(a)(iii). However, Section 177.602(b) provides:

(b) *Assignment of points. If the station owner,* manager, supervisor or other management level employee *was without knowledge of the violation, the Department may permit the station owner to consent to the acceptance of a point assessment for the station in lieu of suspension.*

(1) The station owner bears the burden of proving that the station owner provided proper supervision of the employee who committed the violation, but that the owner's supervision could not have prevented the violation.

(2) By accepting the assessment of points the station owner waives the right to appeal the Department's determination in the case to a court of record. If the station owner refuses to accept the point assessment, the Department will issue the

suspension provided in this chapter for the offense committed.

67 Pa.Code § 177.602(b) (emphasis added).

In *Strickland v. Department of Transportation,* 132 Pa.Cmwlth. 605, 574 A.2d 110 (1990), this Court considered the application of 67 Pa.Code § 177.602(b). In *Strickland,* the Department suspended an inspection station's vehicle and emission inspection certificates because (1) two employees altered an inspection sticker to make it look like an emission sticker; and (2) the employee listed as the one conducting the inspection in question was not the employee who had signed the sticker.[6] At the time of these fraudulent acts, Strickland, the station owner, was not at the station. When informed by telephone that the station had run out of emission stickers, he instructed his employees to borrow some from another station. Unbeknownst to Strickland, the other station had also run out of emission stickers. Strickland did not authorize his employees to alter inspection stickers. Upon returning to the station the next day and discovering that both stations lacked the proper stickers, he ordered both stations to cease inspections.

The trial court found that the employees had acted within the scope of their employment. *Id.* at 113. However, it also found that Strickland did not have personal knowledge of, and did not participate in, the actions of his employees. On appeal to this Court, Strickland argued that his lack of knowledge entitled him to consideration of assignment of points in lieu of suspension. This Court concluded the Department committed an error of law by not considering, and putting into the record, its consideration of the alternate penalty set forth in Section 177.602(b), *i.e.,* points.

**6.** To be precise, items that were altered were "emission inserts," which are pieces of paper designating the month of inspection that are then attached to the inspection sticker located on the vehicle windshield.

■ Therefore, in *all* inspection certificate suspension cases, the Department must at least *consider* the use of the points system and provide evidence of this consideration. *See Strickland*, 574 A.2d at 113–114. The evidence must explain why the Department chose, or declined, to offer points in lieu of a suspension.

■ In a *de novo* review of the Department's action, the trial court may not revise the sanction to one of its liking where the court reaches the same factual and legal conclusion as did the Department. We explained in *Department of Transportation, Bureau of Traffic Safety v. Verna*, 23 Pa.Cmwlth. 260, 351 A.2d 694, 695 (1976), that

> [t]he court may not, as a parallel to exercising its discretion as factfinder, do more than (1) affirm the Director's penalty because the law as applied to the facts heard *de novo* leads to a conclusion of a violation of the law or (2) reverse the Director's penalty because the law as applied to the facts heard *de novo* does not lead to a conclusion of a violation of law. The court may not, because of the possible unfairness or inequity of the result, reverse the Director or modify the penalty imposed.

(emphasis added). It is a manifest abuse of discretion for a trial court to modify or reverse a suspension when it finds that the party charged committed a punishable violation but simply disagrees with the penalty imposed. *See Department of Transportation, Bureau of Traffic Safety v. Cormas*, 32 Pa.Cmwlth. 1, 377 A.2d 1048, 1050 (1977) (citing *Department of Transportation, Bureau of Traffic Safety*

*v. McCartney*, 2 Pa.Cmwlth. 540, 279 A.2d 77, 80 (1971)).

However, our Supreme Court has also held that where the trial court makes findings of fact and conclusions of law different from that of the Department the court may modify the Department's penalty. *Department of Transportation, Bureau of Traffic Safety v. Kobaly*, 477 Pa. 525, 529, 384 A.2d 1213, 1215 (1978). In *Kobaly*, an individual's inspection license was suspended for one year because he was found to have issued inspection stickers without making an inspection; issued an inspection sticker without doing a complete inspection; and engaged in fraudulent record-keeping. Kobaly appealed the suspension, and the trial court made findings of fact different from those of the Department. The trial court reduced the suspension to six months. Kobaly then appealed to this Court, which held that the trial court lacked authority to reduce the Department's suspension. The Pennsylvania Supreme Court reversed. It held that after a *de novo* trial where different findings of fact and conclusions of law are made, the trial court may modify the penalty originally imposed by the Department. *Kobaly*, 477 Pa. at 528–29, 384 A.2d at 1215.

Consistent with *Strickland's* holding, the Department explained why it did not offer McCarthy points instead of a suspension. It offered two reasons. The first was McCarthy's knowledge of the violation, and the second was McCarthy's responsibility to ensure that his employees were properly certified.[7] The trial court found, as fact, that "the owner and management were unaware that the violation took place" and that "both sides agreed that at the time of inspection, no owners or general manager were present." R.R. 69a.[8]

---

7. Of course, Krolikowski may have been doing work at the station, such as vehicle repairs, that did not require a certification.

8. The trial court also found that "PennDOT improperly held [McCarthy] responsible for actions and/or inactions of an employee that do not rise to the level of [a] violation of the

These findings of fact were directly opposite those made by the Department. The Department's stated reason for not offering McCarthy points, *i.e.*, his knowledge, was not supported by any evidence of record. Therefore, the Department's explanation for not offering McCarthy points was inadequate under *Strickland* and, as such, not in compliance with 67 Pa.Code § 177.602(a)(iii).

 In sum, the trial court made different findings of fact and reached different conclusions of law. Under *Kobaly*, 477 Pa. at 528–29, 384 A.2d at 1215, a trial court may modify a sanction where it makes different findings of fact and conclusions of law. Accordingly, the trial court did not err in modifying McCarthy's sanction.

For these reasons, we affirm the trial court.

### *ORDER*

AND NOW, this 5th day of November, 2010, the Order of the Court of Common Pleas of Luzerne County, dated December 31, 2009, in the above-captioned matter is hereby AFFIRMED.

---

Pennsylvania Vehicle Code." R.R. 69a. This was error. The Department can hold McCarthy liable for Krolikowski's fraudulent record-keeping. It is of no moment to the outcome of this appeal.