# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Cabon/Cabon's Central    :
Auto Service,    :
            Appellant    :
   :
       v.    :    No. 147 C.D. 2016
   :    Submitted: August 12, 2016
Commonwealth of Pennsylvania,    :
Department of Transportation,    :
Bureau of Motor Vehicles    :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                **FILED: October 17, 2016**


       Robert Cabon/Cabon's Central Auto Service (Cabon) asks whether the Court of Common Pleas of Allegheny County (trial court) erred in dismissing its statutory appeal of two consecutive one-year suspensions of its Certificate of Appointment (Certificate) as an official emission inspection station as well as a fine of $5,000 imposed by the Department of Transportation, Bureau of Motor Vehicles (PennDOT). Cabon asserts the trial court's decision is not supported by substantial evidence and the trial court erred as a matter of law. He also contends PennDOT did not follow required procedures to justify an order upholding the suspension and fines. Upon review, we affirm.


## I. Background

       By official notice dated March 13, 2015, PennDOT notified Cabon of the imposition of two consecutive one-year suspensions of his Certificate and two

fines of $2,500 each for: (1) furnishing, lending, giving, selling or receiving a certificate of inspection without inspection; and, (2) fraudulent recordkeeping. See Section 4724 of the Vehicle Code, 75 Pa. C.S. §4724.

Cabon appealed to the trial court. The Honorable Robert C. Gallo (now retired) held a hearing. After the hearing, Judge Gallo entered an order dismissing Cabon's appeal. Cabon appealed to this Court, and the trial court directed it to file a concise statement of the errors complained of on appeal, which it did. The trial court, through Senior Judge Lester G. Nauhaus, then issued an opinion pursuant to Pa. R.A.P. 1925(a), in which it set forth the following findings.

At the hearing, PennDOT presented the testimony of Quality Assurance Officer Aaron Dacko (QAO Dacko). QAO Dacko testified he was employed with Parsons Subcontracting (Parsons), through PennDOT, as a quality assurance officer for 10 years. He has also been certified by PennDOT as an official emissions inspector for 10 years. QAO Dacko conducts audits and investigates inspection emissions stations to ensure inspection stickers are properly issued. Tr. Ct. Hr'g, Notes of Testimony (N.T.), 10/8/15, at 8; Reproduced Record (R.R.) at 8a.

An Onboard Diagnostic (OBD) test is required for emissions inspections on all vehicles with a model year of 1996 or newer. N.T. at 8-9; R.R. at 8a-9a. The specific requirements to properly perform the OBD test are found in 67 Pa. Code §177.203. The OBD test requires a station's technician to plug a cable from an emissions analyzer into the vehicle being tested so that the vehicle

2

and the analyzer may communicate with each other. Id. The analyzer records the Vehicle Identification Number (VIN) of the vehicle that receives the inspection sticker.

PennDOT investigated Cabon because its station number was listed on a monthly printout that showed six discrepancies between a) the VINs Cabon's technicians inputted or scanned into the analyzer from information on the owner's vehicle registration card, and b) the VINs from the vehicles that were actually connected to the analyzer. These VINs should match, and when they do not, that information is listed in the printout. N.T. at 9; R.R. at 9a.

The trial court explained the printout was Parson's business record. Cabon objected to its admission, claiming it was a PennDOT record and there was no PennDOT witness present to testify. N.T. at 21; R.R. at 21a. The trial court explained it properly admitted the printout in light of QAO Dacko's testimony that Parsons owns and operates the server that transmits all of the records from every emissions analyzer to Harrisburg. Parsons stores and processes all the data recorded from the analyzer for the printout. N.T. at 11; R.R. at 11a. Parsons does not provide the analyzers to inspection stations; rather, "[t]hey are independent analyzers and manufacturers." N.T. at 27; R.R. at 27a. The printout contains a table that lists the make, year, model and VINs of vehicles from the vehicle owners' registration cards, which are scanned or typed into the analyzer by the technician, and the OBD test VIN and model numbers of vehicles that are connected to the analyzer. The printout also contains the inspection station number, and the technician's identification (ID) number. The technician ID

number indicates which technician entered his number into the analyzer to begin the emissions testing process. N.T. at 12; R.R. at 12a.

Cabon's station number is 1449. The printout listed six vehicles for which Cabon's station issued emissions inspection stickers in which there were discrepancies between the VINs Cabon's technicians entered or scanned from the vehicle owners' registration cards and the VINs recorded by the analyzer from the vehicles actually connected during the OBD test. In other words, relying on QAO Dacko's testimony and its documentary evidence, including the monthly printout, PennDOT claimed Cabon issued emissions inspection stickers to six vehicles that did not undergo the required OBD emissions testing. As such, the printout listed six mismatches for Cabon's station with two technician ID numbers.

Dan Kardell (Kardell) was the technician assigned to two of the vehicles; the other four vehicles used the technician ID number for the station's owner, Robert Cabon. N.T. at 18-19.[1] Kardell performed inspections for 17 years, and Robert Cabon performed inspections for 19 years. N.T. at 60-61; R.R. at 60a-61a. Neither Kardell nor Robert Cabon was previously involved with an inspection station violation. Further, it was stipulated that Robert Cabon was recovering from surgery during the relevant period; thus, he was not personally

---

[1] On direct examination, QAO Dacko testified Robert Cabon's technician identification (ID) number was used in connection with four of the emissions inspections; however, on cross-examination, QAO Dacko acknowledged that Robert Cabon's technician ID number was not the technician ID number used in connection with these four inspections. Tr. Ct. Hr'g, Notes of Testimony (N.T.), 10/8/15, at 18-19, 28-29; Reproduced Record (R.R.) at 18a-19a, 28a-29a. Nevertheless, the printout described above identified Cabon as the official inspection station that performed these four inspections, R.R. at 151a, and Cabon did not deny that these four inspections were performed at its station.

involved in any of the inspections. N.T. at 38-39; R.R. at 38a-39a. For his part, Kardell denied that he ever connected the analyzer to a vehicle other than the one subject to inspection. N.T. at 39; R.R. at 39a.

Through Kardell's testimony, Cabon asserted a defective analyzer probably caused the VIN mismatches. Kardell testified that numerous times daily the connection with the remote computer (the PennDOT computer) would terminate because the remote computer did not respond in a timely manner. N.T. at 42; R.R. at 42a. This would result in an error code. Kardell testified he previously observed a situation in which a VIN was in the analyzer and the error code appeared, which caused the same VIN to remain in the analyzer until it was cleared, and it could potentially remain there for the next vehicle tested. N.T. at 43-44; R.R. at 43a-44a.

In its Pa. R.A.P. 1925(b) Statement, Cabon claimed the trial court erred by finding in favor of PennDOT, asserting the trial court's finding was against the weight of the evidence and the evidence was insufficient to sustain the trial court's finding.

The trial court observed that this case involved a matter of credibility, and the trial court, as trier of fact, was free to make all credibility determinations. It is well-established that the fact-finder exclusively weighs the evidence, assesses the credibility of witnesses and may choose to believe all, part, or none of the testimony. Commonwealth v. Sanchez, 36 A.3d 24 (Pa. 2011).

Here, the trial court explained that it reviewed the evidence admitted at the hearing, and it determined the evidence supported a determination that Cabon committed the two violations PennDOT charged: furnishing, lending, giving, selling or receiving a certificate of inspection without inspection and fraudulent recordkeeping. In particular, the printout showed the discrepancy between the VINs. The trial court further stated Cabon's explanation as to the cause of the discrepancy was merely a theory that was unsubstantiated by the evidence presented at the hearing. Thus, the trial court stated that this Court should affirm the trial court's order that dismissed Cabon's appeal of the suspension and fines. This matter is now before us for disposition.

## II. Issues

On appeal,[2] Cabon asserts: the trial court's decision is not supported by substantial evidence; the trial court erred as a matter of law; and, PennDOT did not follow the requisite procedures for the suspension and fines to be upheld.

## III. Discussion
## A. Contentions

Cabon first argues the trial court's order did not include any findings or analysis. Rather, its determination was limited to a single sentence that Cabon's appeal was dismissed after due consideration. Cabon further contends the trial court's opinion notes Robert Cabon was recovering from surgery when the inspections at issue were conducted; thus, he was not personally involved in any of

---

[2] Our review in an inspection certificate suspension case is limited to determining whether the trial court committed an error of law or whether the trial court's findings were supported by substantial evidence. McCarthy v. Dep't of Transp., 7 A.3d 346 (Pa. Cmwlth. 2010).

6

the inspections. Cabon points out that Kardell performed inspections for 17 years, and Robert Cabon had a license to perform inspections for 19 years. The trial court's opinion indicates neither of these individuals was involved in prior violations. In fact, Kardell testified this was the first time he was aware that Cabon was accused of connecting the analyzer to the wrong vehicle. Robert Cabon confirmed this fact.

Cabon maintains QAO Dacko, PennDOT's sole witness, admitted he had no personal knowledge that Robert Cabon, Kardell, or anyone else actually connected the analyzer to the wrong vehicle. Rather, PennDOT based its entire case on the printout it submitted to suggest the wrong vehicle was connected to the analyzer. QAO Dacko also admitted that the error code referenced by Kardell would occur with some frequency indicating the PennDOT computers were not connecting. Further, QAO Dacko admitted that when the error code occurred, the previous VIN remained in the analyzer for the next vehicle. Cabon contends this testimony was significant as the allegations were based on a mismatch of the VINs in the printout.

Cabon also contends Kardell testified about the difficulty the station experienced with the connection to the remote PennDOT computer. It offered a photograph of the analyzer into evidence to show the connection would terminate when the remote PennDOT computer did not timely respond. Kardell testified when this occurred, the VIN of the last vehicle inspected would remain in the analyzer. Cabon argues it offered Kardell's testimony to explain why the printout PennDOT presented was inaccurate. It contends Kardell's testimony was not

inconsistent with QAO Dacko's testimony that the last VIN would remain in the analyzer when an error occurred.

Further, Kardell confirmed the period at issue coincided with the period in which the computer problem existed. Kardell testified he observed the error message many times, and it appeared when Parson's representatives were present. Cabon contends the analyzer at its station was in use since 1996. Cabon argues this fact prompted the trial court to ask QAO Dacko whether analyzers were inspected or calibrated. QAO Dacko responded that the analyzers were serviced by the manufacturer based on complaints from station owners.

Cabon maintains the issues here also involve the question of whether the trial court's findings were adequately supported. It argues the evidence presented establishes it was in business for many years and this was the first time it was accused of violations of this nature. Cabon asserts Section 4724(c) of the Vehicle Code provides that a court, on appeal from a suspension, may consider the volume of inspections conducted by a station and provide the owner of the station an opportunity to correct any inaccurate records. 75 Pa. C.S. §4724(c). Cabon contends no evidence was presented that it received this opportunity.

Cabon further maintains PennDOT did not present any evidence that it satisfied its obligation to offer Cabon points in lieu of suspension, as it must do when a station owner has no knowledge of an employee's violations, as long as proper supervision is shown. See McCarthy v. Dep't of Transp., 7 A.3d 346 (Pa. Cmwlth. 2010); 67 Pa. Code §175.51(b).

8

Cabon argues the fines and suspensions here were based on two conclusions: that the wrong vehicle was connected to the analyzer and that its records were fraudulent. Cabon asserts a finding of fraud requires more than speculation based on computer printouts of VIN mismatches. Rather, fraud requires proof of intent. It contends QAO Dacko's testimony that he had no such evidence and the fact that Robert Cabon, the station owner, was home recovering from surgery, require the trial court's order be reversed as it was not supported by sufficient evidence. Cabon asserts the charges here mirror those in Snyder v. Department of Transportation, Bureau of Motor Vehicles, 970 A.2d 523 (Pa. Cmwlth. 2009), in which, it argues, this Court noted that PennDOT did not explain how a mechanic's innocent mistake could constitute proof of charges similar to those at issue here.

## B. Analysis

The trial court's role in an inspection certificate appeal is limited "solely to a *de novo* determination of whether the person charged with the violation has indeed committed the violation for which the sanction was imposed." Snyder, 970 A.2d at 527 (quoting Dep't of Transp., Bureau of Traffic Safety v. Verna, 351 A.2d 694, 695 (Pa. Cmwlth. 1976)). Matters of witness credibility are exclusively within the province of the trial court. Firestone Tire & Serv. Ctr., O.I.S. # 798 v. Dep't of Transp., 871 A.2d 863 (Pa. Cmwlth. 2005).

The Vehicle Code requires PennDOT to license and regulate vehicle inspection stations. Section 4724(a) of the Vehicle Code states, in relevant part:

> **(a) General rule.--**[PennDOT] shall supervise and inspect official inspection stations and may suspend the certificate of

9

appointment issued to a station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by [PennDOT]. …

75 Pa. C.S. §4724(a). We construe this provision as imposing strict liability on a station owner for all acts of its employees conducted within the scope of their employment. McCarthy; Dep't of Transp., Bureau of Traffic Safety v. Stahl, 460 A.2d 1223 (Pa. Cmwlth. 1983). For an act to fall within the "scope of employment," the employee's conduct must: (1) be of the kind he was employed to perform; (2) occur within authorized time and space limits; (3) and must be done at least in part to serve the employer. McCarthy, 7 A.3d at 351 (citations omitted). The station owner can defend an enforcement action by showing the employee acted outside the scope of his employment. Id.

Pursuant to Section 177.427(3) of PennDOT's regulations: "A person may not … [f]urnish, loan, give or sell certificates of emission inspection and approval to any … other person except upon an emission inspection performed in accordance with this chapter." 67 Pa. Code §177.427(3); see also 67 Pa. Code §177.602(a) (setting forth penalty for furnishing, lending, giving, selling or receiving of certificate of emission inspection without inspection). In 2014, the year Cabon conducted the emissions inspections at issue here, an OBD test was required for emissions inspections on all vehicles with a model year of 1996 or newer. N.T. at 8-9; R.R. at 8a-9a.

In addition, "fraudulent recordkeeping" is defined as:

10

> A recordkeeping entry not in accordance with fact, truth or required procedure that falsifies or conceals one or more of the following:
>
>> (i) That a certificate of inspection was issued without compliance with the required inspection procedure.
>>
>> (ii) The number of inspections performed.
>>
>> (iii) The individuals or station that performed the inspection.

67 Pa. Code §177.601 (emphasis added).

Each of the above violations is punishable by a one-year suspension and a fine of $2,500 for a first offense. 67 Pa. Code §177.602(a).

Here, the trial court determined PennDOT properly suspended Cabon's Certificate and imposed fines for providing emissions inspection stickers without performing inspections and fraudulent recordkeeping. The record supports the trial court's determinations as to these violations.

More specifically, the trial court credited the testimony of QAO Dacko, who served as a quality assurance officer with Parsons, a PennDOT subcontractor, for 10 years. N.T. at 8; R.R. at 8a. QAO Dacko has been certified by PennDOT as an official emissions inspector for 10 years. Id. QAO Dacko explained that in 2014, the year at issue, emissions inspections on vehicles with model years of 1996 or newer required an OBD test, which requires the technician to connect a cable from the analyzer to the vehicle being tested. N.T. at 8-9; R.R. at 8a-9a. QAO Dacko further explained that in June 2014, he conducted an

11

investigation into possible violations by Cabon after receiving a monthly printout that showed certain instances in which Cabon conducted emissions inspections where the VINs from the vehicle owners' registration cards did not match the VINs of the vehicles that were connected to the analyzer. N.T. at 9; R.R. at 9a. QAO Dacko identified the printout, which the trial court admitted over Cabon's objection. R.R. at 9a-10a. The printout listed six vehicles for which the VINs on the vehicle owners' registration cards did not match the VINs for the vehicles that were connected to Cabon's analyzer and for which Cabon issued emissions stickers. N.T. at 12-15, 17-20; R.R. at 12a-15a, 17a-20a; see R.R. at 151a.[3] Thus, Cabon reported that six vehicles passed emissions inspections, which were not the vehicles actually inspected. As such, no error is apparent in the trial court's determination that PennDOT proved Cabon was subject to a suspension of its Certificate for one year and a fine of $2,500 for furnishing emissions inspection stickers to six vehicles without conducting the required testing. See 67 Pa. Code §177.602(a).

Further, while Cabon maintains Kardell explained that the mismatches on the printout arose because of an error that occurred resulting in the VIN for the

---

[3] In particular, the printout shows the technician typed or scanned the following information from the vehicle registration cards: 2002 Chevrolet Impala, VIN 2G1WF55E829375887; 2001 Ford Ranger shortbed truck, VIN 1FTZR15E01PA28056; 2010 Chevrolet Impala, VIN 2G1WD5EM7A1206535; 2001 Toyota Camry Solara, VIN 2T1CF22P71C456215; 1996 Mazda UMR, VIN 1YVGE31C3T5577701; and, 1997 Pontiac Grand AM, VIN 1G2NE52T1VM549125. In contrast, the following OBD test information was transmitted to the analyzer (for each vehicle respectively): 2010 G6, OBD VIN 1G2ZA5EB6A4108780; 2002 Silverado, OBD VIN 1GCGK29U52Z134625; 2006 Equinox, OBD VIN 2CNDL73F466118324; 2012 Toyota Venza, OBD VIN 4T3BK3BB6CU067091; 2005 Xterra, OBD VIN 5N1AN08W75C609070; 2012 Civic, OBD VIN 2HGFB2F90CH580387. R.R.151a.

prior vehicle remaining in the analyzer, the trial court did not credit Kardell's testimony. Rather, it credited the testimony of QAO Dacko and PennDOT's documentary evidence. In any event, as the trial court recognized, Kardell only testified that this error "could" or "possibly could" occur, and Kardell only inspected two of the six vehicles at issue. N.T. at 39, 43, 44; R.R. at 39a, 43a, 44a. Further, Kardell could not say that this error occurred on the two vehicles he inspected, see N.T. at 56-57; R.R. at 56a-57a, and Cabon did not offer evidence that this error occurred on the remaining four vehicles at issue.

In addition, our review of QAO Dacko's testimony, together with PennDOT's documentary evidence, reveals support for the trial court's determination that Cabon also committed a violation for fraudulent recordkeeping. In particular, QAO Dacko testified the emissions inspection records generated by Cabon for the six vehicles at issue were false in that they reported that the vehicles passed emissions inspections when, in fact, they had not (in light of the fact that the analyzer was connected to a different vehicle in each instance). N.T. at 20-25; R.R. at 20a-25a, 153a-58a.

Contrary to Cabon's assertions, a charge of fraudulent recordkeeping does not require proof of intent. See Orji v. Dep't of Transp. (Pa. Cmwlth., No. 153 C.D. 2013, filed November 8, 2013), 2013 WL 5973937 (unreported).[4] Rather, the applicable regulation defines fraudulent recordkeeping, in part, as "[a] recordkeeping entry not in accordance with fact, truth or required procedure that

---

[4] Pursuant to Commonwealth Court Internal Operating Procedure 414, 210 Pa. Code §69.414, an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value.

falsifies or conceals … [t]hat a certificate of inspection was issued without compliance with the required inspection procedure." 67 Pa. Code §177.601(i). Further, "[a]n entry made to mislead anyone inspecting the record into believing that the record was correct is deceitful." Firestone Tire & Serv. Ctr., 871 A.2d at 867 (citation omitted). Here, as set forth above, the record supports the trial court's determination that Cabon generated emissions inspections records that indicated six vehicles passed emissions tests, when, in fact, they had not. Under the express language of Section 177.601(i), Cabon's record of these six emissions inspections was fraudulent. See McCarthy.

Nevertheless, Cabon argues PennDOT should not have suspended its Certificate in light of the fact that its owner, Robert Cabon, was at home recovering from surgery when the violations at issue occurred, and, therefore, he was not personally involved in any of the inspections at issue. Contrary to this assertion, and as set forth above, in McCarthy, this Court explained that Section 4724(a) of the Vehicle Code, "has been construed to impose strict liability on a station owner for all acts of its employees conducted within the scope of their employment." McCarthy, 7 A.3d at 350 (citation omitted). To that end, the applicable regulation on the station owner's liability is set forth in 67 Pa. Code §177.421. It states, in pertinent part:

> (a) *Personal liability.* It is the responsibility of the owner of an emission inspection station to:
>
> * * * *
>
> (6) Assume full responsibility, with or without actual knowledge, for:

14

(i) Every emission inspection conducted at the emission inspection station.

(ii) Every emission inspection waiver delivered by a certified repair technician at the emission inspection station.

(iii) Every certificate of emission inspection issued to the emission inspection station.

(iv) Every violation of the Vehicle Code or this chapter related to emission inspections committed by an employee of the emission inspection station.

(v) Maintaining an adequate supply of current certificates of emission inspection and inserts for issuance.

67 Pa. Code § 177.421(a)(6) (emphasis added). Thus, the regulation imposes strict liability on station owners for "[e]very emission inspection conducted at the emission inspection station" as well as "[e]very violation of the Vehicle Code [or its attendant regulations] related to emission inspections committed by an employee of the emission inspection station." Here, Cabon make no assertion that Kardell acted outside the scope of his employment. Therefore, Robert Cabon, as station owner, is subject to strict liability for the violations of his employees. See McCarthy.

In short, because the record supports the trial court's factual determinations, and those findings, in turn, support the trial court's legal determinations, we will not disturb the trial court's decision.

Moreover, this case is distinguishable from Snyder, relied on by Cabon. In Snyder, we declined to disturb a trial court's factual finding that a mechanic made "an unintentional mathematical error" in calculating a vehicle's

15

mileage driven since the prior emissions inspection when he issued a 5,000-mile exempt emissions sticker. Thus, in Snyder, "[the mechanic] did not admit that he furnished a certificate of inspection without performing an inspection or that he committed fraudulent recordkeeping, the two charges against him. In fact, he did not furnish a certificate of inspection; rather, he furnished a certificate of exemption from inspection." Id. at 528. Unlike Snyder, the trial court here did not credit Kardell's testimony or afford any weight to Cabon's documentary evidence. Instead, it credited QAO Dacko's testimony and PennDOT's documentary evidence, which revealed Cabon did, in fact, issue emissions inspections stickers for six vehicles without conducting the required emissions inspections on those vehicles as well as generating fraudulent records to that effect. Thus, Synder does not compel the result Cabon seeks here.

Nevertheless, Cabon relies on Section 4724(c) of the Vehicle Code, which states:

> [PennDOT] prior to suspending a certificate of appointment of an official inspection station on the grounds of careless recordkeeping or the court on appeal from a suspension may consider the volume of inspections conducted by the inspection station and provide to the owner or operator of the inspection station the opportunity to correct any inaccurate records.

75 Pa. C.S. §4724(c).

Here, the trial court expressly considered the volume of inspections Cabon conducted. Tr. Ct., Slip Op., at 4. However, it did not permit Cabon an opportunity to correct its records. This is not surprising in light of the trial court's determinations that Cabon committed violations by providing emissions

16

inspections stickers without performing the required inspections and fraudulent recordkeeping. Additionally, Section 4724(c) of the Vehicle Code expressly states a court *may* consider the volume of inspections conducted by the inspection station and provide the owner or operator of the inspection station with the opportunity to correct any inaccurate records. Id. Thus, this provision is discretionary.

Finally, while Cabon points out that in McCarthy, this Court stated that in *all* inspection certificate suspension cases, PennDOT must at least consider the use of the points system (in lieu of suspension) and provide evidence of this consideration, and it did not do so here, our review of the record here reveals Cabon did not raise this issue in either its appeal of PennDOT's suspension notice[5] or at the hearing before the trial court. See N.T. at 1-73; R.R. at 1a-73a (hearing transcript); R.R. at 78a-80a (petition for appeal). Therefore, this issue is waived. See Pa. R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

---

[5] Although Cabon notes that its petition for appeal of PennDOT's suspension notice generally asserted the suspension and fine violated its due process rights, R.R. at 79a, the petition contained *no* assertion that PennDOT did not follow required procedure by considering an offer of points to Cabon in lieu of suspension. R.R. at 78a-80a.

Further, although Cabon points out that the trial court's opinion (authored by a different trial judge than the judge who presided over the hearing) mentioned that PennDOT did not present evidence as to whether it considered an offer of points in lieu of suspension, as set forth above, Cabon did not raise this issue in its petition for appeal of PennDOT's suspension notice or at the hearing before the trial court. See N.T. at 1-73; R.R. at 1a-73a (hearing transcript); R.R. at 78a-80a (petition for appeal).

Accordingly, we affirm.

_____
ROBERT SIMPSON, Judge

Judge McCullough did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Cabon/Cabon's Central     :
Auto Service,     :
               Appellant     :
    :
           v.     :    No. 147 C.D. 2016
    :
Commonwealth of Pennsylvania,     :
Department of Transportation,     :
Bureau of Motor Vehicles     :

## **O R D E R**

**AND NOW**, this 17th day of October, 2016, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge