# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Victor Vega and<br>VPR Motors-OIS# EM67,<br>　　　　　Appellants<br><br>　　　v.<br><br>Commonwealth of Pennsylvania,<br>Department of Transportation,<br>Bureau of Motor Vehicles | :<br>:<br>:<br>:<br>: No. 283 C.D. 2018<br>: Submitted:  September 14, 2018<br>:<br>:<br>:<br>: |

BEFORE:　HONORABLE ROBERT SIMPSON, Judge
　　　　　　　HONORABLE CHRISTINE FIZZANO CANNON, Judge
　　　　　　　HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI　　　　　　　　　FILED:  October 5, 2018

Victor Vega (Vega) and VPR Motors (Station), OIS# EM67, appeal from an order of the Court of Common Pleas of Luzerne County (trial court) denying a motion to set aside the Department of Transportation, Bureau of Motor Vehicles' (PennDOT) Order of Suspension of the Station's Certificate of Appointment as an Official Emission Inspection Station for two years and imposing a $5,000 fine for (1) fraudulent recordkeeping[1] and (2) affixing an

---

[1] 67 Pa. Code § 177.292(a).

inspection sticker without conducting an inspection.[2]   For the following reasons, we affirm.

## I.

On June 9, 2015, PennDOT issued an Order of Fine and Suspension of Official Inspection Station (Suspension Order) to the Station, providing, in pertinent part:

> You are hereby notified that your Certificate of Appointment as an Official Emission Inspection Station is suspended, pursuant to Section 4724 of the Vehicle Code.[3]   Pursuant to Departmental regulations, your Certificate of Appointment is suspended for one (1) year and fined $2,500 for furnish, lend, give, sell or receive a certificate of emission inspection without inspection and one (1) year and fined $2,500 for fraudulent record keeping. . . .[4]
>
> The suspension(s) will run consecutively, for a total suspension of two (2) years and $5,000.  This suspension will run consecutively with any other suspension(s) imposed by the Department for any violation considered separately.  The suspension shall commence upon service of this notice.

---

[2] 67 Pa. Code § 177.427(3).

[3] Section 4724 of the Vehicle Code, 75 Pa.C.S. § 4724.

[4] The four vehicles that correspond to the missing stickers are:  (1) 2004 Chevrolet, VIN – KL1TD52694B164042, sticker IM44400890; (2) 1999 Dodge, VIN - 1B3EJ46X2XN549695, sticker IM44400891; (3) 1999 Jeep, VIN - 1J4GW68NXXC806821, sticker IM44400892; and (4) 2005 GMC, VIN - 1GKDT13S752240884, sticker IM44400893.

2

(Reproduced Record (R.R.) at 4a.) The Station appealed the suspension and fine to the trial court.

At the *de novo* hearing, Marvin Langtry (Langtry), a PennDOT quality assurance officer whose responsibilities included safety and emission inspections, as well as re-inspections of motor vehicles, was qualified as an expert witness for safety and emission inspections of motor vehicles. Langtry testified that he performed an audit of the Station. He found that:

> During the course of the audit . . . four emission stickers were not recorded, showing as not used on our sticker reconciliation. And through further investigation, was able to track them down to the four vehicles we have listed here.
>
> Through work orders provided by the station with the sticker numbers being documented as to what stickers were issued to which vehicles. And then further, based on a previous vehicle inspection history search in the computer system, which shows that none of these vehicles were recorded as being tested as of that day for this year.

(R.R. at 32a – 33a.)

Langtry also testified as to the procedure an inspector should perform when doing an emission inspection of a vehicle:

> A: First thing would be for him to verify the registration is current and valid. He would then proceed to visually inspect the vehicle, being that it is a visual emission inspection county, Luzerne, which is just a visual

3

inspection of the components to verify that they are there and connected, and also to perform a gas cap test – gas cap integrity test, I'm sorry.

Q: And then once those steps are done, how is it that the department manages the stickers and the numbers on the stickers?

A: The technician would scan the registration in the emission analyzer. And as he proceeds through it, it's going to ask questions, are certain components present, are they connected. It's going to prompt him for the mileage, to verify that the vehicle information is correct. It also prompts him to remove the vehicle gas cap, place it on the tester and proceed with the test.

Q: Is it going to prompt him to enter the number of the emission sticker?

A: It is. Once the test was passed, it's going to prompt them to enter an emission sticker and the expiration date.

(R.R. at 33a.) Langtry stated that the four stickers were placed on the vehicle, but were not entered according to this procedure. Furthermore, Langtry stated, regarding the order of an emission inspection:

Q: So is a safety inspection done as part of an emissions inspection?

A: No. An emissions inspection is required to be done before a safety inspection.

Q: Okay. So these vehicles that are in question today, the emission inspection was not properly performed and then yet they were still given a safety inspection as well?

A: That's correct.

4

Q: Under the statute and regulations, is it a violation of any inspector to put a sticker on a vehicle that was not properly inspected?

A: It is.

Q: For both the emissions and/or safety?

A: It is.

Q: And would it be a violation as well to – a record-keeping violation to then put those stickers in to the MV 431 and on to the work orders if they were not properly done?

A: It is a violation, yes.

(R.R. at 33a.) In addition to Langtry's testimony, PennDOT presented the four repair work orders corresponding to the vehicles and stickers that Langtry testified showed fraudulent recordkeeping because they indicated that emission inspections had been performed when they had not been.

Vega, the owner of the Station, testified that at the time of the inspections at issue, he was recovering from knee surgery and his employee, Gary Smith (Smith), now deceased, performed the inspections instead of Vega. Vega also described a meeting with Langtry regarding Smith's improper recording:

A: I told him . . . that I didn't know how – why [Smith] did it, because everything was documented as if everything was good. Two of the vehicles were actually owned by [the Station]. Everything was documented as if the inspection went through, the sticker number, what passes, what fails.

5

I think he panicked and he never showed back up. Mr. Langtry knew this because he visited the shop numerous times after that and even over the phone to speak to Mr. Smith and he never presented himself.

Q: So did you believe that these particular inspections were done properly?

A: By the record keeping, what we have there, we discovered that they weren't entered on there. But judging by the work order, it looks like everything was – on paper it looks like everything was done properly.

(R.R. at 35a.) However, when pressed, Vega conceded that Smith did not properly perform the inspections:

Q: So it's your understanding then that by not entering these stickers in to the computer system for [PennDOT], he did not thoroughly perform or completely perform the inspections?

A: After it was presented to me – after Mr. Langtry, yes, I know that now.

(R.R. at 36a.)

Vega also stated that he did not believe the Station committed any violations because he did not have knowledge that Smith improperly affixed inspection stickers without conducting the inspection.

Based on Langtry's testimony, PennDOT's documentary evidence and Vega's own testimony, the trial court denied the Station's appeal, finding that a certificate of emission inspection was affixed to each of the four vehicles despite

6

the failure of the emission inspector (Smith) to comply with the requirement for entering required inspection data into the VIID.[5]  It also upheld the fraudulent recordkeeping violation because the work orders showed that the emission inspections had been performed when they had not been.  This appeal followed.[6]

## II.

PennDOT's authority to revoke a station's inspection license comes from Section 4724(a) of the Vehicle Code, which provides:

> The department shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station or may impose a monetary penalty or may issue a warning against the station which it finds is not properly equipped or conducted or which has violated or failed to comply with *any* of the provisions of this chapter or regulations adopted by the department.

---

[5] The "VIID" is the "Vehicle Inspection Information Database," which is defined as:

> The vehicle database established to collect inspection test data and to provide emission inspection test standards to emission inspection stations for the purpose of conducting the appropriate emission inspection.

67 Pa. Code § 177.3.

[6] Our scope of review is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence. *McCarthy v. Department of Transportation*, 7 A.3d 346, 350 (Pa. Cmwlth. 2010).

75 Pa.C.S. § 4724(a) (emphasis added). PennDOT found that the Station had violated 67 Pa. Code 177.427(3) and 67 Pa. Code 177.292(a).

As to the charge of affixing an emission sticker without conducting an inspection, Section 177.427(3) provides that a person may not "[f]urnish, loan, give or sell certificates of emission inspection and approval to any official emission inspection station or other person except upon an emission inspection performed in accordance with this chapter." 67 Pa. Code § 177.427(3). Moreover, 67 Pa. Code § 177.291(c) provides that a certificate of emission inspection "may not be marked and affixed to a vehicle until it has successfully passed emission inspection requirements of Chapters 45 and 47 of the Vehicle Code (relating to other required equipment; and inspection of vehicles) and this chapter."

Regarding the fraudulent recordkeeping charge, the term "fraudulent recordkeeping" is defined as "[a] recordkeeping entry not in accordance with fact, truth or required procedure that falsifies or conceals . . . [t]hat a certificate of inspection was issued without compliance with the required inspection procedure." 67 Pa. Code § 177.601(i). Section 177.292(a) provides that "[f]raudulent recording of required data or other forms and cards will be considered cause for suspension of inspection privileges." 67 Pa. Code § 177.292(a). As to what constitutes proper recording, subsection (b) provides:

> The emission inspection inspector shall enter required data for loading into the VIID and record required information on the proper and applicable report forms and place his signature in the appropriate columns designated. This shall be done immediately following the emission inspection.

67 Pa. Code § 177.292(b). Furthermore, 67 Pa. Code §175.42(c)(2) provides that "[a] work order signed by the inspecting mechanic as required under this section shall be available for inspection upon request by the inspection station supervisor or an authorized representative of the Department."

## A.

PennDOT has the burden of proving violations by a preponderance of the evidence.[7] *Tropeck v. Department of Transportation, Bureau of Motor Vehicles*, 847 A.2d 208, 211 (Pa. Cmwlth. 2004). This does not mean that PennDOT needs to present "concrete" evidence that a vehicle inspection was performed improperly. PennDOT merely needs to prove that it is more likely than not that a vehicle inspection was performed improperly. *Id.* We have held:

> Because firsthand testimony concerning the vehicle condition at the time of official inspection is not likely to be available except when the police employ preplanned test inspections, there must be reliance upon credible opinion testimony to meet the needs of the situation.

*Milanovich v. Commonwealth*, 445 A.2d 1337, 1338 (Pa. Cmwlth. 1982).

On appeal, the Station contends that the trial court erred by finding that it kept fraudulent records or that it affixed emission stickers to vehicles that had not been properly inspected because PennDOT failed to present substantial

---

[7] In the Station's brief, it alleges that PennDOT failed to meet its burden of proof beyond a reasonable doubt. This is a misstatement of PennDOT's burden which is only to prove the violations by a preponderance of the evidence.

evidence that the missing stickers were affixed to vehicles without a proper inspection. However, in this case, all the evidence establishes the contrary.

Langtry, a PennDOT quality assurance officer, testified that he discovered four stickers were not recorded and was able to track them down to the exact four vehicles to which they were affixed. Furthermore, he found that there was no record of an emission test ever being conducted on those vehicles. Moreover, despite the emission inspection not being performed, the vehicles were still given a safety inspection. This is substantial evidence for PennDOT to meet its burden to establish that the Station violated 67 Pa. Code § 177.427(3) by affixing emission stickers to vehicles without performing the requisite inspections.[8]

---

[8] The Station also argues that since Vega was recovering from knee surgery when the violations occurred due to the actions of a Station employee (Smith), Vega and the Station cannot be culpable. However, 67 Pa. Code § 177.421(a)(6)(i),(iii) and (iv) provides that it is the responsibility of the owner of an emission inspection station to:

> Assume full responsibility, with or without actual knowledge, for:
>
> > (i) Every emission inspection conducted at the emission inspection station.
>
> > ***
>
> > (iii) Every certificate of emission inspection issued to the emission inspection station.
>
> > (iv) Every violation of the Vehicle Code or this chapter related to emission inspections committed by an employee of the emission inspection station.

**B.**

As to the trial court's finding that the Station engaged in fraudulent recordkeeping by keeping fraudulent work orders, each of the four work orders at issue shows the numbers for the emission and safety certificates of inspection that Smith affixed to each vehicle. We agree with PennDOT's observation that anyone looking at those work orders would conclude that a safety inspection and an emission inspection had been properly completed on these four vehicles, including Vega, who testified that "judging by the work order, it looks like everything was – on paper it looks like everything was done properly." (R.R at 35a.) Because the Station's work orders concealed the fact that certificates of inspection were issued without the required inspections having been conducted, the trial court did not err in finding that PennDOT presented substantial evidence to support a suspension based upon a fraudulent recordkeeping violation.[9]

Accordingly, for the foregoing reasons, we affirm the order of the trial court.

_____
DAN PELLEGRINI, Senior Judge

---

[9] Alternatively, the Station alleges that the trial court erred because it did not reduce the length of the suspensions and fines imposed. A trial court can modify a suspension imposed by PennDOT after a *de novo* hearing if it makes different findings of fact and conclusions of law. *Department of Transportation, Bureau of Traffic Safety v. Kobably*, 384 A.2d 1213 (Pa. 1978). In this case, though, the trial court agreed with PennDOT and did not make alternative findings of fact or conclusions of law and, therefore, could not have lessened the suspensions and fines, even if it had wanted to do so.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Victor Vega and            :
VPR Motors-OIS# EM67,     :
          Appellants     :
                                :
        v.            : No. 283 C.D. 2018
                                :
Commonwealth of Pennsylvania, :
Department of Transportation,   :
Bureau of Motor Vehicles      :

# **O R D E R**

AND NOW, this 5th day of October, 2018, the order of the Court of Common Pleas of Luzerne County dated November 21, 2017, is affirmed.

_____
DAN PELLEGRINI, Senior Judge