**Donald P. SNYDER, Operator**
**# 16–651–787**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF MOTOR VEHICLES, Appellant.**

**Donald P. Snyder, Snyder Brothers Auto Works, OIS # 4556**

v.

**Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles, Appellant.**

**Wayne Harris**

v.

**Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 30, 2009.

Decided April 8, 2009.

---

Terrance M. Edwards, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

No appearance entered on behalf of appellees.

Before PELLEGRINI, Judge, SIMPSON, Judge and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In these consolidated appeals dealing with emissions inspections, the Department of Transportation, Bureau of Motor Vehicles (the Department) seeks review of three orders of the Court of Common Pleas of Allegheny County (trial court) sustaining statutory appeals by an official emissions inspection station, Snyder Brothers Auto Works (the Station), and two of its mechanics, Donald Snyder (Snyder), and Wayne Harris (Harris), from suspensions of their respective emissions inspection certifications for violations of the Department's emissions inspection regulations.[1]

The Department asserts the trial court erred in sustaining the Station's and Harris' appeals despite finding that in March 2004 the Station and Harris issued a 5,000–mile exempt emissions inspection sticker to a 1979 Ford F150 pickup truck, registration # YAA6210 ("the Truck") that was driven more than 5,000 miles since the prior emissions inspection.[2] The Department further asserts substantial evidence does not support the trial court's finding that in February 2005 the Station and Snyder properly issued the same vehicle another 5,000–mile exempt emissions sticker. We affirm as to the March 2004 emissions inspection, but we reverse as to the February 2005 emissions inspection.

By order dated and delivered March 16, 2005, the Department, acting pursuant to 75 Pa.C.S. § 4724 (relating to suspension of certificates of appointment), suspended the Station's certificate of appointment as an official emission inspection station for two years and imposed two fines of $2,500 each. It suspended the Station's certificate one year for a violation of 67 Pa.Code § 177.602(a)(1)(ii) (furnishing an emissions inspection sticker without inspection) and one year for a violation of 67 Pa.Code § 177.602(a)(1)(iii) (fraudulent record keeping). See Reproduced Record (R.R.) at 8a.

Simultaneously, the Department, acting pursuant to 75 Pa.C.S. § 4726 (relating to certification of mechanics), suspended Snyder's and Harris' certifications as official emissions inspectors for a two-year period. It suspended their certifications one year for a violation of 67 Pa.Code § 177.603(1)(ii) (furnishing an emissions inspection certificate without inspection) and one year for a violation of 67 Pa.Code § 177.603(1)(iii) (fraudulent record keeping). See R.R. at 24a, 40a.

## I.

The Station, Snyder and Harris filed separate statutory appeals.[3] In April 2007, the trial court held a consolidated *de novo* hearing on the three emissions inspection appeals at issue here and two safety inspection appeals also involving the Truck.[4] At hearing, PennDOT presented

---

1. The Station, Snyder and Harris failed to comply with this Court's briefing schedule and were precluded from filing appellate briefs.

2. The 5,000–mile exemption from emissions inspection applies to "[v]ehicles driven less than 5,000 miles in the previous 12 months as indicated by the mileage noted on their safety inspection certificate or by the mileage recorded on the vehicle inspection data base and which were owned by one individual for at least 1 year." 67 Pa.Code § 177.101(b)(12).

3. We note a jurisdictional issue regarding the difference in appeal procedures for mechanics and for official inspection stations. However, we need not address the issue here because it was never raised below and, therefore, the jurisdiction of this Court was perfected. *See Mihadas v. Dep't of Transp.*, 741 A.2d 249, 250 n. 1 (Pa.Cmwlth.1999).

4. The Department simultaneously suspended the Station's certificate of appointment as an official safety inspection station for a total of 26 months as follows: one year for furnishing an inspection certificate without inspection

testimony from Clifford Eastly (QAO Eastly), a former inspection station supervisor for the Pennsylvania State Police. QAO Eastly is currently a quality assurance officer employed by Parsons Commercial Advanced Technologies, a private contractor that conducts audits of emissions and safety inspection stations, a duty formerly performed by the State Police.

On February 9, 2005, Parsons Technologies received a phone call from Tony's Auto Services, a garage in Etna, PA, where the Truck was in for repairs. The inspection sticker indicated the Station inspected the Truck four days earlier. The garage had questions about the safety inspection and asked that a quality assurance officer look at the vehicle. Later that day, QAO Eastly inspected the Truck. He testified the Truck needed to undergo and pass an emission inspection on February 5, 2005. Due to the Truck's age, more than 25 years, it needed a visual inspection of the exhaust system and a check of the gas cap. However, the Truck had an exempt emissions sticker. QAO Eastly testified that if a vehicle traveled less than 5,000 miles in the last 12 months, it would not need a visual inspection or gas cap check. In such case, it would be issued an exempt sticker based on the mileage alone.

Here, the parties stipulated the Station and Snyder issued the exempt emissions sticker to the Truck on February 5, 2005. The sticker indicated an odometer reading of 95,992. On February 9, four days later, the odometer read [1]00,463, a difference of 4,471 miles. QAO Eastly testified that to travel 4,471 miles in four days, the Truck would need to be driven 93 miles per hour for 48 hours.[5]

QAO Eastly further stated a visual inspection of the Truck indicated a missing air pump belt, one of six items needed to pass a regular emissions inspection. The catalytic converters from the Truck's exhaust system were also missing. If the Truck needed to undergo a normal emissions test, it would not pass with these items missing. However, with an exempt sticker, emissions inspectors are not required to open the hood or look under the vehicle.

QAO Eastly also testified the Truck did not receive a 5,000–mile emissions exemption in February 2003. The Station's 2004 'MV–431 inspection record indicates a 2003 odometer reading of 86,444. R.R. at 93a. Harris performed the 2003 emissions test at the Station. In March 2004, Harris again tested the Truck at the Station. The Station's 2004 MV–431 inspection record showed a 2004 inspection odometer reading of 91,742 reflecting a difference of 5,298 miles. Notwithstanding, Station and Harris issued the truck an exempt emissions ticker. Harris testified he most likely made a mathematical error in making the 5,000–mile calculation.

Ultimately, the trial court sustained all three appeals. The Department's appeals here followed. Our review in inspection certification suspension cases is limited to determining whether the trial court's findings are supported by substantial evidence or whether the trial court

on the Truck; one year for fraudulent record keeping; and two months for failing to give a written receipt or work order to a customer. The Department also suspended another Station mechanic for issuing a safety inspection sticker to the Truck without performing an inspection. See Donald P. Snyder, Snyder Bros. Auto Works, OIS # 4556, and Joseph W.

Wolski v. Dep't of Transp., Bureau of Motor Vehicles (at Nos. 749 & 756 C.D. 2008).

5. In its brief here, the Department noted QAO Eastly should have divided 4,471 miles by 96 hours, which would indicate the truck would need to be continuously driven 46.5 miles per hour for four days to travel 4,471 miles.

erred as a matter of law. *Dep't of Transp., Bureau of Motor Vehicles v. Mazzarini,* 919 A.2d 295 (Pa.Cmwlth. 2007).

## II.

### A. Station/Inspector Harris

■ The Department first argues the trial court erred in determining the Station and Harris did not furnish an emissions inspection certificate to the Truck without conducting an emissions inspection in violation of 67 Pa.Code § 177.602(a)(1)(ii) and 67 Pa.Code § 177.603(1)(ii), respectively. It asserts the record clearly shows that on March 2, 2004, Harris issued an exempt emissions sticker for the Truck even though its odometer indicates the Truck was driven 5,298 miles since the previous emissions inspection.

In particular, the Department cites Harris' testimony that he issued the 2004 exempt emissions sticker because he added up the mileage in his head and "miscalculated a couple hundred miles." R.R. at 86a–87a. He further stated he did not intentionally furnish the sticker knowing it did not qualify for the exemption. *Id.* at 87a.

The trial court, in sustaining Harris' appeal, found his testimony credible and concluded his unintentional mistake did not warrant a two-year suspension of his emission testing certification. *See Commonwealth v. Wayne Harris, Operator # 23–289–527 (Harris),* (Allegheny County Civil Div. No. SA 401–05, filed September 5, 2008). Similarly, in sustaining the Station's emissions inspection appeal, the trial court determined the evidence did not warrant the suspensions for issuing a sticker without inspection and for fraudulent record keeping. *See Commonwealth v. Donald P. Snyder, Operator # 16–651–787 and Snyder Bros. Auto Works, Inc. (Snyder),* (Allegheny County Civil Div. Nos. SA 344–05, SA 345–05, SA 346–05, filed September 5, 2008).

On appeal here, the Department avers the undisputed evidence of record clearly shows the Station and Harris furnished the 5,000–mile exempt emissions sticker to the Truck in violation of 67 Pa.Code § 177.101(b)(12). The Department asserts that contrary to the trial court's reasoning there is no requirement that an inspection station or inspector intend to violate the regulations. Rather, the only issue is whether the vehicle was driven less than 5,000 miles since the last emissions inspection. *See Mazzarini* (trial court may not, because of possible unfairness or inequity of the result, reverse or modify a suspension of an inspection station's certification); *Dep't of Transp., Bureau of Traffic Safety v. Cormas,* 32 Pa.Cmwlth. 1, 377 A.2d 1048 (1977) (same); *Dep't of Transp., Bureau of Traffic Safety v. McCartney,* 2 Pa.Cmwlth. 540, 279 A.2d 77 (1971) (where evidence supports Secretary of Transportation's suspension, a trial court may not reverse it because it considers the period of suspension to be too severe a penalty). The Department therefore maintains the trial court erred in sustaining Station's and Harris' statutory appeals.

In *Department of Transportation, Bureau of Traffic Safety v. Verna,* 23 Pa. Cmwlth. 260, 351 A.2d 694 (1976), we recognized that a trial court's role in an inspection certificate appeal is limited

> *solely to a de novo determination of whether the person charged with the violation has indeed committed the violation for which the sanction was imposed.* The court may not, as a parallel to exercising its discretion *as factfinder,* do more than (1) affirm the Director's penalty because the law as applied to the facts heard de novo leads to a conclusion of a violation of the law or (2)

reverse the Director's penalty because the law as applied to the facts heard de novo does not lead to a conclusion of a violation of law. The court may not, because of the possible unfairness or inequity of the result, reverse the Director or modify the penalty imposed.

*Id.* at 695 (emphasis in original).

Here, the trial court found Harris, at the time of the March 2004 emissions inspection, made an unintentional mathematical error in calculating the mileage driven since the previous emission inspection. Specifically, the trial court stated:

> The Court notes that the old odometer reading was 86,444, and Harris' then-current reading was 91,742. (Tr. 276). It is not unreasonable to believe that Harris erred at determining a 5,000 difference. More importantly, had [Harris] intended to exempt an [ineligible] vehicle, he could have fudged the numbers to indicate 5,000 miles or less. The patent mistake obviates mathematical error. The error bolsters [Harris'] testimony that he did nothing intentionally, and that an emissions test would have taken only twenty (20) minutes. (Tr. 278).

> The Court notes that a two (2) year suspension of [Harris'] emissions testing privileges is far too burdensome for a single alleged violation of such little magnitude. As to any regulated business, this Court will not strip a person of his livelihood without a significant showing of that individual's intentional noncompliance. The Secretary's actions are inappropriate under the circumstances. Again, sustained.

*Harris,* slip op. at 2.

Thus, Harris admitted in 2004 he issued a 5,000–mile exempt emissions sticker to a vehicle driven more than 5,000 miles since the previous emissions inspection. While he claimed his mistake was unintentional and not fraudulent, his mistake was confirmed by mileage records. As a result of his mistake regarding mileage, Harris admitted he did not perform an emissions inspection prior to issuing an "exempt" sticker.

However, Harris did not admit that he furnished a certificate of inspection without performing an inspection or that he committed fraudulent record keeping, the two charges against him. In fact, he did not furnish a certificate of inspection; rather, he furnished a certificate of exemption from inspection. Also, he denied fraudulent intent. The Department does not explain how Harris' admissions of innocent mistake constitute proof of the charges against him. Also, the Department does not seek penalties against Harris or his employer, the Station, based on some lesser included offense arising from the 2004 incident. Therefore, we are unable to discern error in this part of the trial court's orders, and we affirm.

### B. Station/Inspector Snyder

■ In this argument, the Department asserts substantial evidence does not support the trial court's determination that the Station and Snyder properly issued an exempt emissions sticker to the Truck on February 5, 2005 because it was driven less than 5,000 miles since its prior emissions inspection. Citing *Samuel J. Lansberry, Inc. v. Pennsylvania Public Utility Commission,* 134 Pa.Cmwlth. 218, 578 A.2d 600, 601 (1990) (citation omitted), the Department avers substantial evidence is "relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached." Such evidence must be legally credible; mere suspicion will not suffice. *Id.*

As discussed above, the parties stipulated the Station and Snyder issued a 5,000–mile exempt emissions sticker to the Truck on February 5, 2005 on the basis the Truck was only driven 4,250 miles since the odometer reading of 91,742 on March 2, 2004. The 2005 emissions inspection sticker indicated an odometer reading of 95,992 miles. *See also* Station's 2005 MV–431 inspection record, Pet.'s Ex. A (2004 odometer 91,742; 2005 odometer 95,992). However, on February 9, 2005, when QAO Eastly inspected the Truck, the odometer read [1]00,463, indicating the Truck was driven another 4,471 miles in just four days.

The Department asserts that in order for the trial court to find the Station and Snyder properly issued a 5,000–mile emissions inspection exemption, the trial court must have inferred the vehicle was driven an average of more than 1,000 miles per day from February 5–9, 2005. The Department avers the record shows the Truck is a decrepit old truck that could not have been driven 4,471 miles in four days. Thus, the Department contends, any inference the Truck was driven 4,471 miles in four days is unreasonable. As support, the Department cites *Carlin v. Department of Transportation, Bureau of Driver Licensing*, 739 A.2d 656 (Pa.Cmwlth.1999) (trial court must use common sense in making findings of fact). *See also Glen Alden Coal Co. v. Schuylkill County Comm'rs*, 345 Pa. 159, 27 A.2d 239 (1942) (where court's conclusion is in whole or in part based on impractical considerations, it should be set aside).

In its opinion in *Snyder*, which encompassed both the Station's safety inspection and emissions inspection appeals, the trial court did not directly address the issue of whether the Truck was actually driven more than 5,000 miles at the time of the February 5, 2005 emissions inspection. Rather, the trial court found all suspensions imposed to be "patently severe" and "unreasonable." *See Snyder*, slip. op. at 4. A fair reading of all the trial court's opinions also reveals the trial court's belief that the Department did not offer direct proof as to the condition of the Truck on February 5, 2005, the day of inspection.

■ We agree with the Department that the record, viewed in its entirety, does not support a reasonable inference that the Truck, a 25–year old vehicle with safety inspection problems, was driven only 4,250 miles in the year prior to the February 5, 2005 emissions inspection,[6] and then driven another 4,471 miles in the next four days. A trial court's findings must be based on practical considerations and be supported by the record. *Glen Alden Coal; Lansberry; Carlin.*

Indeed, the trial court made *no findings* as to the Truck's mileage on the date of inspection or on the date of re-inspection four days later.[7] Also, the trial court did not attempt to reconcile evidence of the Truck's mileage at the February 5, 2005 inspection and undisputed evidence of the Truck's mileage four days later, beyond noting the passage of time. In this manner, the trial court's decision is not supported by findings.

■ What the trial court clearly did, however, was to express disdain for the severity of the penalty sought. But, a court may not reverse an inspection certificate suspension because it considers the

---

**6.** We note the Truck's safety inspection sticker, also dated February 5, 2005, left the line for the odometer reading completely blank. *See* Notes of Testimony, 04/19/07, at 39.

**7.** The emissions mechanic at the time of the February 5, 2005 inspection, Donald Snyder, did not testify. He was the only defendant mechanic who did not testify.

period of suspension to be too severe a penalty. *Mazzarini; Cormas; Verna; McCartney.*

For the above reasons, we hold the trial court erred in sustaining the Station's and Snyder's appeals of the Department's suspension of their respective emissions inspection certifications related to the issuance of the February 5, 2005 emissions inspection sticker. Accordingly, we reverse the order of the trial court and reinstate the Department's suspension orders addressed to the Station and Snyder.

## ORDER

AND NOW, this 8th day of April, 2009, the orders of the Court of Common Pleas of Allegheny County sustaining Appellees' statutory appeals in the above-captioned cases are **AFFIRMED in part and REVERSED in part.** The orders are **AFFIRMED** in 755 C.D. 2008 and in 748 C.D. 2008 as they relate to the March, 2004 emissions inspection only. The orders are **REVERSED** in 747 C.D. 2008 and in 748 C.D. 2008 as to the February 5, 2005 emissions inspection, and the Department of Transportation, Bureau of Motor Vehicles' March 16, 2005 suspension orders addressed to Donald P. Snyder and Snyder Brothers Auto Works, Inc. for the identified incident are **REINSTATED.**