IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Salim Sillah,                          :
                                       :
                    Appellant          :
                                       :
              v.                       : No. 1311 C.D. 2016
                                       : Submitted: August 18, 2017
                                       :
Commonwealth of Pennsylvania,          :
Department of Transportation           :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge[1]

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  January 16, 2018


        Salim Sillah appeals from the March 31, 2016 order of the Court of
Common Pleas of Philadelphia County (trial court) denying his statutory appeal
from the order of the Department of Transportation, Bureau of Motor Vehicles
(Department) permanently suspending the Certificate of Appointment (Certificate)
issued to SJ Auto Repair-OIS #DE21 (SJ Auto Repair) as an official emission

_____

[1] This decision was reached before the conclusion of Judge Cosgrove's service with this Court.

inspection station and imposing a $5,000.00 fine, pursuant to Section 4724(a) of the Vehicle Code.[2]  We affirm.

Sillah owns SJ Auto Repair, a shop located in Philadelphia that is certified by the Department to perform required state emissions inspections.  By official notice dated March 24, 2014, the Department notified Sillah that it was permanently suspending SJ Auto Repair's certification[3] as an emission inspection station and imposing a $5,000 fine for furnishing an emissions certificate of inspection without conducting an emissions inspection[4] and for fraudulent record keeping.[5]  Reproduced Record (R.R.) at 37a.  The Department stated that the penalty was imposed based on the following:

---

[2] 75 Pa. C.S. §4724(a).  Section 4724(a) of the Vehicle Code provides that "[t]he [D]epartment . . . may suspend the certificate of appointment issued to a station or may impose a monetary penalty . . . against the station, . . . which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the [D]epartment."

[3] Sillah also received official notice that the Department was permanently suspending his certification as an official emission inspector pursuant to Section 4726(b) of the Vehicle Code, 75 Pa. C.S. §4726(b), which states that "[t]he [D]epartment . . . may suspend the certification issued to a mechanic or may impose a monetary penalty if it finds that the mechanic has improperly conducted inspections or has violated or failed to comply with any provisions of this chapter or regulations adopted by the [D]epartment."  R.R. at 38a.

[4] Section 177.427(3) of the Department's regulations states that "[a] person may not . . . [f]urnish, loan, give or sell certificates of emission inspection and approval to any official emission inspection station or other person except upon an emission inspection performed in accordance with this chapter."  67 Pa. Code §177.427(3).

[5] Section 177.601 of the Department's regulations defines "fraudulent recordkeeping" as "[a] recordkeeping entry not in accordance with fact, truth or required procedure that falsifies or conceals one or more of the following:  (i) [t]hat a certificate of inspection was issued without compliance with the required inspection procedure[;]  (ii) [t]he number of inspections performed[; or] (iii) [t]he individuals or station that performed the inspection."  67 Pa. Code §177.601.

2

On January 18, 2012[, a] covert auditor was issued sticker IM2-1914288 on a 2002 Oldsmobile, VIN-1G3WS52H62F219503 by inspector Salim Sillah, Oper 25-537-457 passed. The covert vehicle was set to fail for the [Malfunction Indicator Light (MIL)[6]] Bulb [in the "key on, engine running" (KOER) position,] which the inspector had told the covert auditor it would fail for the check engine light on but still passed the vehicle after several attempts with no communications to the Emission test equipment[.]

*Id.*

On April 4, 2014, Sillah and SJ Auto Repair appealed *pro se* the Department's decision to the trial court, which held a hearing on January 20, 2016.[7] Sillah's counsel initially noted that Sillah had filed a *pro se* appeal of the Department's suspension of SJ Auto Repair's Certificate under Section 4724 of the Vehicle Code, and argued that the appeal was of the suspension of his certificate as an official emissions inspector. R.R. at 3a-4a. However, counsel agreed that Sillah wanted to proceed with respect to the Department's suspension of SJ Auto Repair's Certificate under Section 4724. *Id.* at 4a.

---

[6] The Department's regulations define an MIL as "[d]ashboard light illuminated when a vehicle's onboard computer detects conditions likely to result in emissions exceeding standards by 1½ times or greater. The MIL may display 'Check Engine,' 'Service Engine Soon,' or other similar message, or a symbol or picture representing an automobile engine." 67 Pa. Code §177.3.

[7] Section 4724(b) of the Vehicle Code states that "[a]ny person whose . . . certificate of appointment has been . . . suspended under this chapter shall have the right to appeal to the court vested with jurisdiction of appeals by or pursuant to Title 42 (relating to judiciary and juridical procedure)." 75 Pa. C.S. §4724(b). In turn, Section 933(a)(1)(ii) of the Judicial Code vests appellate jurisdiction in the trial court. 42 Pa. C.S. §933(a)(1)(ii).

In support of the suspension and fine, the Department presented Exhibits C-1[8] and C-2,[9] which were admitted without objection, and the testimony of Karl Wagner, a Quality Assurance Officer Supervisor with Parson's Technologies, a subcontractor with the Department that enforces the Department's Emissions and Safety Inspection Division. Sillah testified and presented the testimony of Rich Rhoades, a Master Certified Technician and automotive vocational instructor.

Wagner testified that Parson's Technologies investigated SJ Auto Repair on January 18, 2012 as part of a covert audit. R.R. at 5a. He stated that John Townsend, a covert operator, arrived at SJ Auto Repair with a 2002 Oldsmobile Intrigue and requested only an emissions test. *Id.* at 6a. Wagner testified that he set the vehicle to fail emissions testing by installing an inducement

[8] *See* R.R. at 15a. Exhibit C-1 is a certified packet of the following Department documents: (1) the March 2014 notification of the suspension of SJ Auto Repair's Certificate; (2) the Department's consideration of point assessment in lieu of suspension; (3) notification of the report of the Quality Assurance Officer indicating violations and scheduling a hearing; (4) notification of the date, time, and location of the hearing; (5) the Pennsylvania Emissions Team Official Inspection Station Covert Audit Form (Audit Form); (6) the Vehicle Emissions Inspection Station Report showing the test results of passing inspection; (7) the March 2014 notification of the suspension of Sillah's certificate to inspect motor vehicles; and (8) the Department's disciplinary file for SJ Auto Repair and Sillah showing the imposition of one-year suspensions and fines for prior violations in 2009 for furnishing a certificate of inspection without conducting an inspection and for fraudulent recordkeeping. *See* R.R. at 60a-69a. However, Sillah later interposed a hearsay objection to the admission of the Audit Form and the trial court stated that it would not be considered in the disposition of the appeal. *See id.* at 18a. Although Sillah later sought to withdraw his objection to the document, he acceded to the trial court's determination that the record was closed. *Id.* at 33a.

[9] The Department's Exhibit C-2 are the results of emissions tests on the 2002 Oldsmobile Intrigue for inspections that were conducted before and after the inspection at SJ Auto Repair, indicating that the vehicle failed the prior and subsequent inspections, and the emissions results from the inspection at SJ Auto Repair indicating that the vehicle passed that inspection. R.R. at 70a-74a.

4

that illuminated the Malfunction Indicator Lamp (MIL), also known colloquially as the "check engine light." *Id.* Wagner stated that when a vehicle is started, an inspector is to observe the MIL and then mark it as either passing or failing, as indicated. *Id.* at 9a. He testified that if the MIL is illuminated, the inspector should mark the vehicle as failing the initial visual inspection on the MIL Command Status line, and if the MIL is off, the vehicle should be marked as passing initial inspection.[10] *Id.* He stated that in the instant case, the MIL status line was left blank. *Id.* According to Wagner, this indicates that the inspector did

---

[10] Section 177.203(b)(2)(ii) and (iv) of the Department's regulations states, in relevant part:

> (2) *Performing the OBD-I/M check.* Following a determination of readiness, the seven set procedure delineated below shall be used when performing an OBD-I/M check:
>
> * * *
>
> (ii) Visually examine the vehicle instrument panel to determine if the MIL illuminates briefly when the ignition key is turned to the ''key on, engine off'' (KOEO) position. A brief period of illumination of the MIL at start-up is normal and helps confirm the MIL bulb is in proper operating condition. This portion of the test procedure is also known as the ''bulb check.''
>
> * * *
>
> (iv) Start the vehicle's engine so that the vehicle is in the ''key on, engine running'' (KOER) condition. The MIL may illuminate and then extinguish during this phase. Continued illumination of the MIL (MIL commanded on) while the engine is running is cause for failure of the OBD-I/M check under §177.204(2) (relating to basis for failure).

67 Pa. Code §177.203(b)(2)(ii) and (iv).

not successfully connect the Oldsmobile to the Department's computer system On-Board Diagnostic (OBD) Analyzer,[11] and thus, the emissions testing was not properly completed. *Id.* He testified that when a vehicle is unable to communicate with the computer, the technician should attempt to communicate three times. *Id.* at 10a. He stated that the technician at Parson's was successful in prior attempts to communicate with the computer. *Id.*

Wagner testified that if a vehicle is unable to communicate with the computer system after three attempts, the technician is able to determine whether the vehicle passes the emissions test by looking to see if the MIL is illuminated. R.R. at 10a. He stated that the 2002 Oldsmobile Intrigue should have failed the emissions inspection and not been issued a sticker because the vehicle was unable to connect to the computer and the MIL was set to be illuminated. *Id.* at 11a, 12a.

On cross-examination, Wagner testified that there are instances when the inspector has discretion to pass or fail the vehicle. R.R. at 12a. He confirmed that there is a Bulletin that was issued by the Department, entered as Exhibit P-1, which provides information about vehicle communications with the OBD Analyzer and the computer system (the Bulletin). *Id.* at 13a. Wagner stated that the Bulletin instructs inspectors to make three attempts to communicate with the vehicle. *Id.* He testified that if the vehicle does not communicate after three attempts, it is at the discretion of the inspector to pass or fail the vehicle. *Id.* Wagner stated that

---

[11] Wagner explained that vehicles that are Model Year 1996 or later are equipped with a plug that can connect to an OBD analyzer. R.R. at 9a. He stated that the OBD analyzer electronically communicates with the emissions analyzer and that the information from the emissions analyzer is communicated to the Department's computer, which ultimately determines the results of the emissions test. *Id.*

the decision to pass or fail a vehicle at this point would depend on whether the MIL was illuminated while the vehicle was running. *Id.* at 14a.

Sillah's expert witness, Rich Rhoades, testified that a vehicle can pass inspection when a check engine light is illuminated. R.R. at 19a, 21a. He stated that if there is a situation when the MIL light is on and the computer is not communicating, it is possible for the vehicle to pass. *Id.* He explained that so long as the technician follows the process outlined in the book published by the Commonwealth, the vehicle could pass. *Id.* He stated that Exhibit P-1 indicates that technicians are instructed following three attempts to communicate with the computer, "[i]f the vehicle still does not communicate proceed with a non-communication result." *Id.* Rhoades testified that his interpretation of the instructions in Exhibit P-1 is that a non-communication result could pass even though the MIL light is illuminated. *Id.* He stated that the two expert witnesses disagreed as to whether a vehicle can pass emissions inspection if there is a non-communication result and the MIL light is illuminated. *Id.*

Sillah testified that he attempted to connect to the OBD computer system three times and that he visually inspected the vehicle. R.R. at 27a. He testified that he followed the instructions based on his interpretation of the Bulletin, entered as P-1. *Id.* at 28a. He conceded that the MIL light remained illuminated while the key was on and the vehicle's engine was running. *Id.* at 26a. On surredirect examination, Wagner testified that the inducement that caused the MIL to be illuminated was still intact when the vehicle was returned to the Parson's Technologies facility. *Id.* at 29a.

7

On March 31, 2016, the trial court entered a one-sentence order denying Sillah's appeal and reinstating the Department's suspension. R.R. 59a.[12] Sillah then filed the instant appeal.[13, 14]

---

[12] In its opinion filed in support of its order, the trial court stated, in relevant part:

> Mr. Wagner and Mr. [Rhoades] disagreed about whether or not the 2002 Oldsmobile Intrigue should have passed the inspection. Mr. [Rhoades'] opinion was based, in significant part, on Mr. Sillah's testimony that the OBD in the 2002 Oldsmobile Intrigue was unable to communicate with the analyzer. Mr. [Rhoades] testified that the 2007 Bulletin permitted Mr. Sillah to proceed with "a non-communication result" and, therefore, that Mr. Sillah had the discretion to pass the vehicle.
>
> The court, however, did not find Mr. Sillah's testimony that the OBD in the 2002 Oldsmobile Intrigue was unable to communicate with the analyzer to be credible. The three Vehicle Inspection/Maintenance Program Emission Reports [in Department Exhibit C-2] for the inspections done immediately before and the one report for the inspection done immediately after the inspection at SJ Auto Repair showed that the OBD in the 2002 Oldsmobile Intrigue was able to communicate with the analyzer. The court finds that the four reports [are] more compelling than Mr. Sillah's testimony that the OBD on the 2002 Oldsmobile Intrigue was unable to communicate with his analyzer. Mr. [Rhoades'] suggestion that perhaps there was a problem with the cables used by Mr. Sillah at SJ Auto Repair was insufficient to alter this court's finding. The court also concludes that the previously mentioned regulations specify that a vehicle be deemed to fail an inspection when its MIL light continued to be illuminated when the key is on and the engine is running.
>
> The actions of SJ Auto Repair through Mr. Sillah were fraudulent. Mr. Sillah falsely recorded on the Vehicle Inspection/Maintenance Program Emission Report that the 2002 Oldsmobile Intrigue passed inspection and that the vehicle's OBD was unable to communicate with the inspection station's analyzer. Additionally, he issued a sticker when none should have been issued.

**(Footnote continued on next page…)**

8

Sillah first argues that the Department's charges of failure to perform an emissions inspection and fraudulent record keeping against SJ Auto Repair are not supported by substantial evidence. However, Sillah did not raise these substantial evidence claims in the Concise Statement of Errors Complained of on Appeal that he filed in the trial court pursuant to Pa. R.A.P. 1925(b). *See* R.R. at 95a-96a. As the Supreme Court has explained:

> Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions

---

**(continued…)**

> . . . In the present case, Mr. Sillah on behalf of SJ Auto Repair falsely and intentionally recorded the previously noted information on the Vehicle Inspection/Maintenance Program Emission Report with the intent of deceiving the Department. Counsel for SJ Auto Repair noted that there was no evidence that Mr. Sillah took his actions for money or a favor. While this appears to be true, actions may be deceitful without them being motivated by money or favor.

R.R. at 108a-109a (footnotes omitted).

[13] Although Sillah initially filed the appeal in the Superior Court, the Superior Court granted his motion to transfer the appeal to this Court.

[14] Our review in inspection certificate suspension cases is limited to determining whether the trial court committed an error of law or whether its findings of fact are supported by substantial evidence. *Snyder v. Department of Transportation, Bureau of Motor Vehicles*, 970 A.2d 523, 526-27 (Pa. Cmwlth. 2009). Substantial evidence is defined as "'relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached.' Such evidence must be legally credible; mere suspicion will not suffice." *Id.* at 528 (citation omitted).

9

are not subject to *ad hoc* exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court *sua sponte*, and the Rule applies notwithstanding an appellee's request not to enforce it; and, if Rule 1925 is not clear as to what is required of an appellant, on-the-record actions taken by the appellant aimed at compliance may satisfy the Rule.

*Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011) (footnote omitted). As a result, these allegations of error have been waived for purposes of appeal. Pa. R.A.P. 1925(b)(4)(vii); *Hill*.[15]

Sillah next claims that the trial court erred in limiting its review of the statutory penalties imposed by the Department for SJ Auto Repair's violations.

---

[15] Moreover, these claims are without merit. In support of this claim, Sillah relies on: the Department's failure to present the testimony of the covert auditor; his own testimony that the trial court found not credible; Rhoades' testimony that was based upon Sillah's discredited testimony; and the Audit Form in Exhibit C-1 that the trial court did not consider based upon Sillah's hearsay objection. However, questions regarding the weight of the evidence and witness credibility are "solely within the province of the trial court," *Castagna v. Department of Transportation, Bureau of Motor Vehicles*, 831 A.2d 156, 160 n.4 (Pa. Cmwlth. 2003), and the trial court may "accept or reject any testimony in whole or in part." *DiCola v. Department of Transportation, Bureau of Driver Licensing*, 694 A.2d 398, 400 (Pa. Cmwlth. 1997). If there is record evidence "adequate to support the finding found by the trial court, as fact finder, we are precluded from overturning that finding and must affirm." *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989). Further, this Court must review the evidence in a light most favorable to the Department, the prevailing party in the trial court. *McDonald v. Department of Transportation, Bureau of Driver Licensing*, 708 A.2d 154, 156 (Pa. Cmwlth. 1998). As outlined above, Wagner's testimony as corroborated by the Department's exhibits, and Sillah's admission that the MIL light remained illuminated when the key was on and the engine was running, sufficiently support the trial court's conclusions regarding SJ Auto Repair's violations and the reinstatement of the Department's suspension of SJ Auto Repair's Certificate and the imposition of a fine. Further, the Department was empowered to permanently suspend SJ Auto Repair's Certificate and impose the $5,000.00 fine for each violation because it was SJ Auto Repair's second violation of each provision. 67 Pa. Code §177.602(a)(ii), (iii).

Specifically, Sillah asserts that the trial court improperly determined that it could not alter the suspension and fine that the Department imposed.

A trial court may "alter the penalty [imposed by the Department] if, in the trial de novo, it makes findings of fact and conclusions of law different from that of the [Department]." *Department of Transportation, Bureau of Traffic Safety v. Kobaly*, 384 A.2d 1213, 1215 (Pa. 1978). However, that is not the case herein. Rather, as in this case, where the trial court reaches the same conclusions as the Department following the trial de novo:

> The court may not, as a parallel to exercising its discretion as factfinder, do more than (1) affirm the [Department's] penalty because the law as applied to the facts heard de novo leads to a conclusion of a violation of the law or (2) reverse the [Department's] penalty because the law as applied to the facts heard de novo does not lead to a conclusion of a violation of law.

*Department of Transportation, Bureau of Traffic Safety v. Cormas*, 377 A.2d 1048, 1050 (Pa. Cmwlth. 1977). *See also Department of Transportation, Bureau of Traffic Safety v. Slipp*, 550 A.2d 838, 840 (Pa. Cmwlth. 1988) ("Where, in an inspection license suspension case, the trial court makes new findings of fact but reaches the same legal conclusions as [the Department], it may not alter the [Department] penalty. On the other hand, if the court reaches a conclusion of law different from that reached by [the Department], it clearly has the authority to modify or correct the penalty imposed by [the Department].") (citations omitted). Because the trial court did not make conclusions of law different from those of the Department with respect to SJ Auto Repair's violations, *Kobaly* is distinguishable and the court did not err in limiting its review of the penalty imposed by the Department.

11

Finally, Sillah argues that the trial court erred in dismissing the appeal of the suspension of his certification as an official emission inspector and the fine imposed pursuant to Section 4726(b) of the Vehicle Code. However, as noted above, at the trial court hearing, Sillah conceded that the appeal before that court related solely to the suspension and the fine imposed on SJ Auto Repair's violations, R.R. at 4a, thereby withdrawing any purported appeal of the suspension and fine imposed on his violations as an official emissions inspector.

Moreover, at that time,[16] any appeal regarding the Department's suspension of Sillah's certificate and the fine imposed should have been filed with the Department pursuant to the Administrative Agency Law[17] with subsequent appellate review by this Court. *Mohamed v. Department of Transportation, Bureau of Motor Vehicles*, 40 A.3d 1186, 1195-96 (Pa. 2012). In fact, the Department's March 24, 2014 notice of the suspension and fine explained the appeal process to Sillah as follows:

> You have a right to request a hearing on the above referenced sanction(s) under 2 Pa. C.S. §§501-508 (relating to general rules of administrative practice and

---

[16] Section 4724(b) of the Vehicle Code was amended by the Act of November 4, 2016, P.L. 1277, and now provides, in relevant part:

> **(b) Judicial review.**—Any person whose mechanic certificate issued under section 4726 (relating to certification of mechanics) . . . has been . . . suspended or who has received a monetary penalty under this chapter shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

75 Pa. C.S. §4724(b).

[17] 2 Pa. C.S. §§501-508, 701-704.

12

procedure of administrative agencies); 1 Pa. Code Part II (relating to general rules of administrative practice and procedure) and 67 Pa. Code Chapter 491 (relating to administrative practice and procedure) by submitting a written request for a hearing within 30 days of the above mail date to the Administrative Docket Clerk, Office of Chief Counsel, 400 North Street, 9th Floor, Harrisburg, PA 17120-0096. A copy of this letter shall accompany the request.

**THIS IS YOUR OPPORTUNITY TO BE HEARD IN THIS MATTER. IF YOU FAIL TO REQUEST A HEARING ON THE ABOVE REFERENCED SUSPENSION(S) WITHIN 30 DAYS OF THE MAIL DATE OF THIS NOTICE, YOU WILL HAVE WAIVED YOUR RIGHT TO CHALLENGE THE SUSPENSION. ADDITIONALLY, THE ABOVE SANCTION(S) WILL ALSO BE FINAL AND YOUR CERTIFICATION AS AN OFFICIAL EMISSION INSPECTOR WILL BE SUSPENDED EFFECTIVE [MARCH 24, 2014].**

R.R. at 38a (emphasis in original). As a result, Sillah was informed of the proper method to administratively appeal the Department's suspension and fine and his allegation of purported trial court error in this regard is without merit.[18]

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

---

[18] Sillah does not argue that the trial court erred in failing to transfer the matter pursuant to Section 5103 of the Judicial Code, 42 Pa. C.S. §5103 (relating to the transfer of erroneously filed matters).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Salim Sillah, : 
                                    : 
            Appellant : 
                                    : 
            v. : No. 1311 C.D. 2016
                                    : 
                                    : 
Commonwealth of Pennsylvania, : 
Department of Transportation : 

# **O R D E R**

AND NOW this 16<u>th</u> day of <u>January</u>, 2018, the order of the Philadelphia County Court of Common Pleas dated March 30, 2016, is AFFIRMED.

 

 

_____
MICHAEL H. WOJCIK, Judge

Salim Sillah, :
               Appellant :
                 :
          v. :
                 :
Commonwealth of Pennsylvania, : No. 1311 C.D. 2016
Department of Transportation : Submitted: August 18, 2017


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE              FILED: January 16, 2018


      As I take issue with how the trial court addressed this matter below, I dissent and would instead remand. After conducting a hearing on an appeal of the Department of Transportation's suspension filed nearly two years earlier, the trial court entered an order on a pre-printed form which merely checked a box where the word "DENIED" was circled. This (as the Majority generously describes it) "one-sentence order denying Sillah's appeal," hardly provides even a hint of the trial court's reasoning or basis for its actions. (Majority, slip op. at 7.) Nonetheless, this was all Sillah had upon which to base the present appeal, and his subsequent Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925, which the trial court directed him to file.

      Only after that Statement was filed did the trial court outline its perspective in an opinion. The Majority finds Sillah failed to raise his "substantial

evidence claims" in this Statement and thus are "waived for purposes of appeal."
(Majority, slip op. at 9-10.)  It is with this that I take particular issue with the
Majority.  Rule 1925 was never meant to be a "waiver trap," yet its application in
this case can be seen as nothing less.  The trial court's order from which the present
appeal lies offers nothing upon which a complete Rule 1925 statement can be
submitted, rendering the finding of waiver improper.  Given the Majority's view to
the contrary, I must dissent.[1]

_____

JOSEPH M. COSGROVE, Judge

---

[1] In a footnote, the Majority suggests that, despite waiver, Sillah's "substantial evidence"
claims are "without merit."  (Majority, slip op. at 13.)  Although I disagree with the Majority's
view of the merits, this suggestion is of no moment to the question of whether the waiver finding
itself was appropriate given the trial court's failure to offer any basis for its decision prior to the
filing of the Rule 1925 statement.