# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kedecia Manna, d/b/a 9th and Lloyd Inspections, OIS #EG30 | : | CASES CONSOLIDATED |
| | : | |
| | : | |
| v. | : | No. 993 C.D. 2022 |
| | : | |
| Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles, | : | |
| | : | |
| | : | |
| Appellant | : | |

| | | |
|---|---|---|
| Kedecia Manna, d/b/a/ 9th and Lloyd Inspections, OIS #EG30 | : | |
| | : | |
| | : | |
| v. | : | No. 994 C.D. 2022 |
| | : | Submitted: September 9, 2024 |
| Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles, | : | |
| | : | |
| | : | |
| Appellant | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**          **FILED: October 7, 2024**

In these consolidated appeals,[1] the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles (Department) appeals from the orders of the Court of Common Pleas of Delaware County (trial court), which

---

[1] This Court *sua sponte* consolidated these appeals by order dated July 17, 2023.

sustained the appeals of Kedecia Manna (Manna), d/b/a 9th and Lloyd Inspections, OIS #EG30 (Station), from the Department's suspension of Manna's Certificate of Appointment as an Official Safety Inspection Station (Safety Certificate) and Certificate of Appointment as an Official Emission Inspection Station (Emissions Certificate) (together, Certificates), and reinstated the Certificates. Before this Court, the Department argues it properly suspended the Certificates as Manna's liability insurance policy, which is required by Department regulations, was cancelled. Upon review, we affirm.

## I. BACKGROUND

Some brief background is essential to understanding the facts of this matter, as well as numerous other related appeals,[2] along with the relationship among the various individuals involved therewith. As stated in this Court's September 27, 2023 Memorandum Opinion and Order denying the Department's request to reinstate its automatic supersedeas pending appeal, Manna operates the Station located at 1033 West Ninth Street in Chester and rents the building housing the Station from her father and/or stepmother. (9/27/23 Mem. Op. & Order at 3.) Manna's brother and his girlfriend, Kayla Lebowski, operate a competing station in the same building. (*Id.* at 4.) As will become apparent from the credited testimony, discussed more fully below, there is some family discord, to say the least.

The Department contracts with Parsons Corporation (Parsons) to conduct investigative and administrative audits of inspection stations. (*Id.*) Thomas Bishop

---

[2] This Court's September 27, 2023 Memorandum Opinion and Order denying the Department's motion to reinstate its automatic supersedeas reflects there are numerous appeals involving Manna and the Department pending in this Court: the instant ones at 993 and 994 C.D. 2022 (consolidated), and others at 516 and 517 C.D. 2022 (consolidated), 785 and 786 C.D. 2022 (consolidated), 1057 and 1058 C.D. 2022 (consolidated), 1059-1062 C.D. 2022 (consolidated), and 230 C.D. 2023.

2

is a Quality Assurance Manager with Parsons (QAO Bishop).[3]  Gregory Neely is a Quality Assurance Officer with Parsons (QAO Neely).

On November 2, 2021, QAO Neely and Trooper Christopher Tustin (Trooper Tustin), a vehicle fraud investigator with the Pennsylvania State Police, conducted an audit of the Station.  (Trial court's Findings of Fact (FOF) ¶¶ 6, 8.)  On November 4, 2021, the Department hand delivered a notice to Manna stating the audit revealed that Manna's certificate of liability insurance had been cancelled on October 18, 2021, for nonpayment.[4]  (*Id.* ¶¶ 1-2.)  The notice advised that, pursuant to the Department's regulation at 67 Pa. Code § 175.22(b)(4),[5] cancellation of insurance automatically voids the Inspection Certificate and inspections cannot be performed until the Department received new proof of insurance.  (*Id.* ¶ 2.)  On November 19, 2021, another notice was issued pertaining to the Emissions Certificate, which cited 67 Pa. Code § 177.402(b)(4).[6]  (*Id.* ¶ 3.)  By letter hand-delivered on December 10, 2021, the Department confirmed both Certificates were "voided on October 18, 2021" after Manna's insurance was cancelled for nonpayment.  (Reproduced Record (R.R.) at 67a.)  The letter further acknowledged receipt of proof of new insurance and stated, "[w]hile this insurance policy meets the regulatory requirements, it is understood that this policy is scheduled to be canceled on January 1, 2022, by your insurance carrier."  (*Id.*)  The letter further stated that to reinstate the Certificates,

---

[3] The trial court refers to Bishop as a Quality Assurance Officer or QAO Bishop.  Thus, we will do the same.

[4] A copy of the November 4, 2021 notice is found at page 33a of the Reproduced Record.

[5] This regulation provides, "[c]ancellation of the bond or insurance shall automatically void the certificate of appointment.  Inspections shall cease until the [Department] receives a new bond or proof of insurance."  67 Pa. Code § 175.22(b)(4).

[6] A copy of the November 19, 2021 notice is found at page 27a of the Reproduced Record.  The regulation cited therein is identical to its counterpart in Section 175.22(b)(4) except Section 177.402(b)(4) pertains to emissions certificates.

the Department must be satisfied the Station is properly equipped and staffed with certified personnel and that the Station conducts business "honestly and in the best interests of the Commonwealth." (*Id.*) The letter stated Manna did not comply with the following requests by the Department:

- to meet with your assigned [QAO] and the Pennsylvania State Police Vehicle Fraud Investigator;

- to return your void certificates of appointment, all unissued certificates of inspection, and all inspection materials to the Bureau;

- to secure stickers under lock and key in a safe place; and

- to maintain and/or provide inspection records as required.

(*Id.*) The letter continued that because Manna claimed the required records were stolen, "it is unclear if your [S]tation meets the requirements to be reappointed." (*Id.*)

Manna appealed the notices.[7] Manna also filed emergency petitions seeking supersedeas and/or a temporary stay, which were subsequently granted by the trial court. On July 21, 2022, the trial court held a *de novo* hearing on Manna's appeals.[8]

At the hearing, the Department did not present any witnesses. (FOF ¶ 4.) Instead, the Department submitted a copy of the notices and audit report, to which Manna stipulated. (*Id.*) The Department also submitted Manna's testimony from

---

[7] The appeal related to the Emissions Certificate suspension was given trial court docket number cv-2021-010004 and docket number 993 C.D. 2022 in this Court. The appeal related to the Safety Certificate suspension was given trial court docket number cv-2021-010005 and docket number 994 C.D. 2022 in this Court.

[8] A copy of the transcript from the hearing is found at pages 129a through 200a of the Reproduced Record. The transcript contains testimony in other proceedings involving Manna, which the trial court considered together. The original record contains numerous other transcripts from other proceedings in these matters, including the supersedeas hearing and on various other motions.

another hearing where Manna admitted that the insurance lapsed without Manna's knowledge. (*Id.* ¶ 5.)

Manna testified on her own behalf as follows. On November 2, 2021, QAO Neely and Trooper Tustin went to the Station for what Manna understood was to verify the Station was open, which it was. (*Id.* ¶¶ 6-7.) QAO Neely performed a regular audit. (*Id.* ¶ 8.) Manna provided QAO Neely with a copy of an insurance policy with a July 21, 2022 expiration date. (*Id.* ¶ 9.) Manna received a call from Trooper Tustin two days later informing her the insurance was cancelled for nonpayment on October 18, 2021. (*Id.* ¶ 12.) Manna contacted her insurance provider to inquire and obtained a new insurance policy the same day, which was valid for one year. (*Id.* ¶ 15.) Manna faxed the Department a copy of the new policy the same day.[9] (*Id.* ¶ 16.) A Department official called Manna, advising the new policy was not acceptable since it did not cover what needed to be covered, although a month later she received a letter from the Department indicating it was acceptable but was scheduled to be cancelled on January 2, 2022, despite the policy stating it was valid through November 4, 2022. (*Id.* ¶¶ 17-19.) After the telephone call, Manna emailed a copy of the new policy to Parsons and Department officials. (*Id.* ¶ 20.)

On November 5, 2021, Trooper Tustin and QAO Neely delivered a notice to Manna's house stating the original insurance policy was cancelled for nonpayment. (*Id.* ¶ 22.) That same day, Manna received a check from the original insurer stating the policy was cancelled because Manna did not cooperate with a mandatory physical inspection, for which Manna never received notice. (*Id.* ¶¶ 23-24.) Manna had not known of the cancellation until November 4, 2021, when Manna inquired.

---

[9] A copy of the new certificate of liability insurance and policy are found at pages 39a through 48a of the Reproduced Record.

(*Id.* ¶ 26.) According to Manna, a competing station owned by her brother and his girlfriend, Lebowski, shares the same building as the Station,[10] and a year earlier Lebowski forcibly removed and destroyed Manna's mailbox, an incident the Department stipulated occurred. (*Id.* ¶¶ 30-32, 43.) As a result, the Station's mail is delivered to the competing station. (*Id.* ¶ 33.) Also, because Manna had been unlawfully evicted from the building by her father's wife just days before the insurance was cancelled and Manna was warned she would be arrested if she attempted to enter the building, Manna was not at the Station to receive mail. (*Id.* ¶¶ 44-46.) Although some mail is delivered to Manna's home address, Department regulations require certain items be sent only to the Station's business address. (*Id.* ¶¶ 34, 36.)

Because QAO Neely previously testified in another matter that he does not verify insurance and just accepts the certificate of insurance provided, Manna testified someone with knowledge the policy was cancelled had to contact Parsons, such as someone who had access to and was opening Manna's mail. (*Id.* ¶¶ 38-41.) QAO Bishop told Manna a competing business had reported the Station "had been discontinued." (*Id.* ¶ 40.) QAO Bishop knew Manna's father, who QAO Bishop called a "good guy," and Manna started having problems with audits after Manna started having problems with her father. (*Id.* ¶¶ 42-43.) The trial court found Manna's testimony credible and noted that although neither QAO Bishop nor QAO Neely testified in this matter, they were previously found not credible by the trial court in another matter involving Manna. (*Id.* ¶¶ 48-50.)

---

[10] The trial court found that the Department improperly awarded the competing station a certificate of appointment since it and Manna's station share common access, citing 67 Pa. Code § 175.21(e). (FOF ¶¶ 70-71, 93.)

Based upon the testimony provided, the trial court determined Manna was denied due process because she was not given an opportunity to be heard after receiving the suspension notice, as required by 67 Pa. Code § 177.651.[11] (*Id.* ¶ 55.) The trial court further found that after Manna provided copies of the new insurance, the Station should have been permitted to resume operations under the Department's regulations. (*Id.* ¶ 61.) The trial court also found credible Manna's testimony that Lebowski stole the Station's mail, resulting in Manna not receiving notice of the insurance cancellation. (*Id.* ¶ 62.) In addition, the trial court found Manna followed the law when it came to the eviction despite it being unlawful, and that the trial court "cannot find that Manna violated 67 Pa. Code § 175.22(b)(4) and [§] 177.402(b)(2) because that would assist [the Department] to sanction Manna for her failure to perform an illegal act." (*Id.* ¶ 69.)

The trial court found QAO Bishop and Lebowski "systematically orchestrated Manna receiving the violations from the November 2, 2021" audit, Lebowski informed QAO Bishop of the unlawful eviction leading to other audits of the Station, and QAO Neely and Trooper Tustin went to the Station unannounced on November 2, 2021. (*Id.* ¶¶ 88-92, 105.) The trial court found the notices inaccurately stated Manna's insurance was cancelled for nonpayment, which the Department did not try to confirm was accurate, before suspending the Certificates. (*Id.* ¶¶ 94-96, 103.) Furthermore, the trial court stated that "[b]ut for the conduct of QAO Bishop, Manna would not have been audited on November 2, 2021 and received violations from this audit." (*Id.* ¶ 97.) The trial court found "QAO Bishop demonstrated a bias against

---

[11] This regulation provides that "[p]rior to the immediate suspension of any official emission inspection station, certificate of appointment, emission inspector certification or certified repair technician, the Department shall, within 3 days, provide written notice of the alleged violation and the opportunity to be heard." 67 Pa. Code § 177.651.

7

Manna," and "QAO Bishop, a government agent of [the Department], engaged in conduct that was so grossly shocking and so outrageous as to violate the universal sense of justice; and therefore, denied Manna of due process barring the violations" resulting in the suspension of Manna's Certificates. (*Id.* ¶ 98, 105.) Citing precedent, the trial court reasoned it had authority to "alter the penalty" when an owner lacks knowledge of a violation, which Manna did. (*Id.* ¶¶ 100-02, 105.) Accordingly, the trial court granted Manna's appeals and reinstated the Certificates. (Trial Court's Order.)

In its Opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), after restating the procedural and factual history, including Manna's testimony, the trial court explained that the plain language of the regulations upon which the Department relied bars inspections only until evidence of new insurance is provided. (1925(a) Op. at 10.)[12] Further, the trial court explained that Manna credibly testified she was unaware of the insurance cancellation and immediately obtained new insurance. (*Id.* at 12.) It further reasoned that, to the extent the Department relied upon Section 4724(a) of the Vehicle Code, 75 Pa.C.S. § 4724(a),[13] such argument was without merit because none of the notices referenced that provision. (*Id.* at 13.)

---

[12] A copy of the trial court's 1925(a) Opinion is found beginning on page 243a of the Reproduced Record.

[13] Section 4724(a) provides:

> The [D]epartment shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station or may impose a monetary penalty or may issue a warning against the station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the [D]epartment. A schedule of all penalties, points and suspension may be established by the [D]epartment by publishing a notice in the Pennsylvania Bulletin until the regulations governing

**(Footnote continued on next page…)**

8

The Department appeals.[14]

## II.    PARTIES' ARGUMENTS[15]

The Department argues under its regulations, specifically 67 Pa. Code §§ 177.402(b)(4) and 175.22(b)(4), cancellation of one's insurance automatically voids emissions and safety certificates. It maintains there is substantial evidence to support its actions because Manna admitted her insurance had been cancelled and the reason therefore is irrelevant. The Department further maintains the trial court erred or abused its discretion in reinstating the Certificates as the Department is tasked with ensuring a station meets the requirements for such certificates. According to the Department, it is within the Department's purview to reinstate the Certificates and it "raised credible concerns that [the S]tation was not operating in the best interests of the Commonwealth." (Department's Brief (Br.) at 15.) It maintains only after Manna returns all the required documents would the Department schedule a site visit to ensure the Station was properly equipped, secured, and staffed.

---

these penalties are promulgated by the [D]epartment. The [D]epartment shall maintain a list of all stations holding certificates of appointment and of those whose certificates of appointment have been suspended. Any suspended certificate of appointment and all unused certificates of inspection shall be returned immediately to the [D]epartment.

75 Pa.C.S. § 4724(a).

[14] The Department's appeals resulted in an automatic supersedeas under Pennsylvania Rule of Appellate Procedure 1736, Pa.R.A.P. 1736. Manna petitioned the trial court to vacate the automatic supersedeas, which the trial court granted. Before this Court, the Department sought to reinstate the supersedeas, which was denied by Memorandum Opinion and Order entered September 27, 2023.

[15] Appellees QAO Bishop, QAO Neely, Patrick Monahan, and Parsons were precluded from filing briefs and participating in oral argument, if scheduled, by Order of January 18, 2024.

Manna, proceeding pro se, argues she was unaware her insurance had been cancelled as she was not receiving mail due to an issue with the neighboring and competing station, and upon learning from the Department that the insurance was cancelled, Manna immediately obtained another policy. Manna acknowledges the Department's regulations provide for automatic voiding of a certificate but points out they also provide that it is temporary until proof of insurance is provided, which Manna did. Upon proof of new insurance, Manna argues the Station was entitled to resume inspections. Manna also argues the trial court credited her testimony as to the events surrounding the insurance cancellation and subsequent suspension of the Certificates. Manna points to precedent that allows a trial court to "alter the penalty" when it finds the station's operator was unaware of the violation, which is what the trial court did here. Manna further argues that the Department cited to no statutory authority that would have permitted it to void the Certificates after November 4, 2021, when she provided proof of new insurance. To the extent the Department relies upon other provisions of the Vehicle Code, Manna responds the Department did not cite those provisions in its notices and reliance upon it now would violate Manna's due process rights.

## III. DISCUSSION

We review suspensions of inspection certificates "to determine[e] whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence." *McCarthy v. Dep't of Transp.*, 7 A.3d 346, 350 (Pa. Cmwlth. 2010). "[S]ubstantial evidence is [defined as] 'relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached.'" *Snyder v. Dep't of Transp., Bureau of Motor Vehicles*, 970 A.2d 523, 528 (Pa.

10

Cmwlth. 2009) (citation omitted). The trial court serves as finder of fact, and if the record evidence "is adequate to support the finding found by the trial court, . . . we are precluded from overturning th[e] finding and must affirm." *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989). The Court reviews the record "evidence in a light most favorable to . . . the prevailing party in the trial court." *Sillah v. Dep't of Transp.* (Pa. Cmwlth., No. 1311 C.D. 2016, filed Jan. 16, 2018), slip op. at 10 n.15[16] (citing *McDonald v. Dep't of Transp., Bureau of Driver Licensing*, 708 A.2d 154, 156 (Pa. Cmwlth. 1998)). Evidentiary weight determinations are "solely within the province of the trial court." *Id.* (citing *Castagna v. Dep't of Transp., Bureau of Motor Vehicles*, 831 A.2d 156, 160 n.4 (Pa. Cmwlth. 2003)). Likewise, "witness credibility [lies] solely within the province of the trial court." *Castagna*, 831 A.2d at 160 n.4. The Department bears the burden of proving violations by a preponderance of the evidence. *Firestone Tire & Serv. Ctr., O.I.S. #798 v. Dep't of Transp.*, 871 A.2d 863, 867 (Pa. Cmwlth. 2005).

In its notices to Manna, the Department cited its regulations, 67 Pa. Code §§ 175.22(b)(4) (pertaining to safety certificates) and 177.402(b)(4) (pertaining to emissions certificates), as the bases for suspending Manna's Certificates. The regulations identically provide that "[c]ancellation of the bond or insurance shall automatically void the certificate of appointment." 67 Pa. Code §§ 175.22(b)(4), 177.402(b)(4). Importantly, however, the very next sentence provides that "[i]nspections shall cease **until** the [Department] receives a new bond or proof of insurance." *Id.* (emphasis added). Manna testified she provided proof of insurance on November 4, 2021, when she first learned her prior insurance was cancelled, by

---

[16] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

11

faxing a copy to the Department. (FOF ¶ 16.) She further testified that someone from the Department called her that day saying the insurance was unacceptable, although in a subsequent letter, the Department acknowledged it was acceptable. (*Id.* ¶¶ 17-18.) The trial court found Manna's testimony credible. (*Id.* ¶ 48.) The trial court, as factfinder, is charged with making credibility determinations. *Sillah*, slip op. at 10 n.15. In short, based upon the credited evidence and the very same regulations the Department used to suspend Manna's Certificates, Manna's Certificates were reinstated upon her providing proof of the new insurance policy and she should have been permitted to resume inspections.

To the extent the Department relies upon provisions of the Vehicle Code to justify its refusal to reinstate Manna's Certificates, the trial court concluded the Department did not cite those provisions and therefore, the argument is without merit. (1925 Op. at 14.) We agree. As explained in *Manna v. Department of Transportation, Bureau of Motor Vehicles* (Pa. Cmwlth., Nos. 516 & 517 C.D. 2022, filed September 20, 2024), slip op. at 14-15, holding someone accountable for violations of statutory or regulatory provisions that were not cited violates due process.

## IV. CONCLUSION

For the foregoing reasons, we affirm the trial court's orders sustaining Manna's appeals and reinstating Manna's Certificates.

_____

**RENÉE COHN JUBELIRER,** President Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kedecia Manna, d/b/a 9th and Lloyd Inspections, OIS #EG30 | : | CASES CONSOLIDATED |
| | : | |
| | : | |
| v. | : | No. 993 C.D. 2022 |
| | : | |
| Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles, | : | |
| | : | |
| | : | |
| Appellant | : | |

| | | |
|---|---|---|
| Kedecia Manna, d/b/a/ 9th and Lloyd Inspections, OIS #EG30 | : | |
| | : | |
| | : | |
| v. | : | No. 994 C.D. 2022 |
| | : | |
| Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles, | : | |
| | : | |
| | : | |
| Appellant | : | |

# **O R D E R**

**NOW**, October 7, 2024, the Orders of the Court of Common Pleas of Delaware County, entered in the above-captioned matters, are **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge